## ZIMMERMAN v. HEINRICHS.

1. **Conveyance: FRAUD: HUSBAND AND WIFE.** Where a man bartered certain realty to the woman he subsequently married, receiving from her certain property in exchange, but executing no conveyance of the realty, and shortly after marriage made a deed conveying a part of the land alleged to be sold, but did not convey the remainder until some months afterward, upon the same day that a judgment was rendered against him upon a debt incurred before marriage: *Held*, that the earlier conveyance was valid, but that the latter was fraudulent.

2. ———: ———: ———. It is not necessary that there should be proof of positive knowledge of the existence of the debt by the grantee to invalidate the conveyance; such knowledge may be inferred from circumstances.

*Appeal from Johnson District Court.*

WEDNESDAY, JUNE 7.

ACTION to set aside a conveyance of certain real estate made by the defendant, H. M. Heinrichs, to his co-defendant, on the ground that the same was fraudulent, and made to hinder and delay his creditors.. The answer admitted the conveyance and alleged that the same was made in good faith and for a sufficient consideration, and denied the alleged fraud and purpose in making the conveyance. Decree for plaintiff, and defendant appeals.

*J. D. Templin,* for appellant.

A deed merely voluntary is not fraudulent *per se* as to existing creditors, and he who attacks it must show the want of consideration, fraud, or other illegality. (*Carson v. Foley,* 1 Iowa, 524.) A legal title should not be divested except upon testimony which is clear, distinct and satisfactory. (*Williamson v. Williamson,* 4 Iowa, 279.) Fraud will never be imputed when the facts upon which it is predicated may be consistent with honesty. (*Lyman v. Cessford,* 15 Iowa, 229; *Scofield v. Blind,* 33 Id., 175.) The purpose to hinder and delay creditors must be proven to have been known to

the grantee, before a deed will be declared fraudulent and void as to him. (*Hutchinson v. Watkins*, 17 Iowa, 475.) The grantee must be shown to have participated in the alleged fraud, at least so far as to have a knowledge of it, before a conveyance will be set aside for fraud, and the creditor can have no relief although the grantor had a fraudulent intent. (*Steel v. Ward*, 25 Iowa, 535.) Actual possession was notice to the world of the occupant's rights and equities in the premises. (*Moore v. Pierson*, 6 Iowa, 278; *Baldwin v. Thompson*, 15 Id., 504; *Harper v. Perry*, 28 Id., 57.)

*Fairall, Boal & Jackson*, for appellee.

A voluntary conveyance by a person indebted at the time is fraudulent and void against all antecedent debtors, and without regard to the amount of the existing debts, or the circumstances of the party. (*Reade v. Livingston*, 3 Johns. Ch., 481; *Bayard v. Hoffman*, 4 Id., 450.) In the absence of an existing actual intent to defraud, whether the voluntary conveyance to a child will be void as to creditors of the father will depend upon its reasonableness, and the condition of the grantor as respects his ability to pay his debts out of the property retained by him. (*Stewart v. Rogers*, 25 Iowa, 398; *Gardner v. Baker*, Id., 345.)

SEEVERS, CH. J.—The defendants are husband and wife, having been married on the first day of January, 1869. Previous to such marriage Mrs. Heinrichs was a widow, her first husband having died some time in 1868. Mrs. Heinrichs and her first husband, in 1868, farmed some land belonging to Sofal, as renters; the amount of land so rented and farmed was twenty-seven or twenty-eight acres, which was cultivated in corn and wheat, the share of Mrs. Heinrichs and her husband being two-thirds. Sometime in the fall of 1868 Mr. Heinrichs commenced visiting Mrs. Heinrichs; whether he did so at first with matrimonial intentions does not appear. In November of that year it is claimed that Mrs. Heinrichs purchased the land in controversy of her present husband, paying there-

*1. CONVEYANCE: fraud: husband and wife.*

for six hundred bushels of corn, worth three hundred dollars; three hundred and thirty-eight bushels of wheat, worth three hundred and thirty-eight dollars; one cooking stove, worth twenty-seven dollars; one clock, worth two dollars and fifty cents; and one shaving horse, worth one dollar. Besides this property the land had been sold for taxes, and was encumbered with a mortgage to the school fund to the amount of two hundred and twenty dollars, which Mrs. Heinrichs was to pay. The corn at the time was standing in the field, and the same was gathered by Heinrichs. A portion of the aforesaid property was sold by Heinrichs, and the proceeds appropriated to the payment of his debts, and another portion was fed to stock, and still another portion was used by the family after the marriage.

At the time of the alleged purchase Mrs. Heinrichs was in debt to an inconsiderable amount. She did not have any property except a cow and calf, and some beds and a few articles of household goods. No conveyance was made at the time of the alleged sale and purchase of the land. Mrs. Heinrichs, within a very few days, moved to the premises in controversy, Heinrichs assisting her, and they both lived on the premises, in the same house, until they were married, in less than two months thereafter. The defendant, Heinrichs, became indebted to the plaintiff in 1856, and it is uncertain whether a demand for the payment of this debt was made before or after the marriage, nor is there any direct and positive testimony that Mrs. Heinrichs had any knowledge whatever of the existence of this debt, or that Heinrichs was indebted to any one at the time of the alleged purchase and sale. On the 20th day of March, 1869, the plaintiff brought suit against Heinrichs on the indebtedness, and recovered a judgment thereon on the 7th day of April, 1869, and on the same day a conveyance of a portion of the premises in controversy was made by Heinrichs to Mrs. Heinrichs, another portion having been conveyed to her on the 16th day of February previous. Mrs. Heinrichs fails to make any explanation whatever in relation to the delay or time the deeds were made, or why two were made instead of one. Heinrichs

states or gives two reasons: one being that he had no money to pay for the necessary stamps (the consideration was stated in one at $500, and the other $400), and because he was "waiting to see if one would satisfy her, and when she found out that he had not done as he agreed, she got mad and he had to make her a deed for the land sold her in full." Heinrichs further states, when speaking of the last deed, "I went with her on this business, but did not go into the recorder's office; I showed her the door; I was a little mad because she made me give the other deed. She took two men in town as interpreters to see I was to do according to the agreement to give her the deed." Without recapitulating the testimony as to the value of the land at the time of the purchase and sale, it is sufficient to say we are very forcibly impressed that Mrs. Heinrichs made a good trade or bargain. One of the parties is a German, and the other born in Bohemia, and neither of them speak the English language very well, if at all so as to be understood.

We have stated the facts very fully and we feel constrained to say that, in our opinion, the conveyance executed on the seventh day of April, 1869, is fraudulent and void and must be set aside. The explanation why this deed was not made when the other was is not satisfactory. Why was it that Mrs. Heinrichs happened to get excited and insist on having this deed made on the very day judgment was rendered? The excuse about stamps does not seem probable. Why did Heinrichs get mad when his wife insisted on his doing as he agreed to do? Why did he not take the deed to the recorder's office, or at least go there with his wife, instead of contenting himself with showing her the door and staying outside? All this is unreasonable and improbable and, as we have said, Mrs. Heinrichs gives no explanation whatever of these circumstances.

It is insisted by counsel that there is no proof that Mrs. Heinrichs had any knowledge of the indebtedness or of the fraudulent intent of Heinrichs, if any such there was. If by this counsel mean direct and positive proof of knowledge, we agree with him. And if he is to be

understood as claiming that there must be such proof before the conveyance can be set aside, then we do not concur with his view of the law. It is but seldom positive and direct proof of fraud can be given, and in almost every instance it must be inferred from circumstances, including the actions and conduct of the parties. Persons about to commit a fraud do not proclaim it from the housetops. They are more apt to do the simplest thing in an unnatural manner. At the time of the last conveyance Mrs. Heinrichs, we think, must have known of the suit then pending, and we have but little doubt that this conveyance was an afterthought. So far as we can see the conveyance made on the 16th day of February was executed in the usual and natural manner, and while the purchase and sale in many respects is singular and unusual, still, considering the nativity of these parties, their mode of doing business, and their want of knowledge of our language and customs, we are unwilling to hold that the last mentioned deed is fraudulent. We come to this conclusion the more readily because we are unable from the proof to say with certainty and conviction that Mrs. Heinrichs had knowledge of the existence of the debt at the time of the purchase and sale.

The decree of the District Court will, therefore, be affirmed as to the conveyance executed April 7, 1869, and reversed as to the conveyance dated February 16, 1869. A decree will be entered here, if counsel so desire, or remanded to the court below with directions to enter a decree in accordance with this opinion. The plaintiff must pay the costs in this court.

MODIFIED AND AFFIRMED.