## REDHEAD, WELLSLAGER & Co. v. PRATT & BARNEY.

1. **Pleading:** PETITION: AVERMENT NOT DENIED. In an action to set aside a sale as fraudulent, an allegation that plaintiff has obtained judgment against the alleged fraudulent vendor must be taken as true when not denied.

2. **Fraudulent Conveyance:** GOOD IN PART. A conveyance made to a creditor of the vendor may properly be held good as between the parties to the extent of the debt paid thereby, and fraudulent as to the remainder, at the suit of a creditor of the vendor, where the value of the property is sufficient to pay both debts.

3. **Practice on Appeal:** TRIAL DE NOVO: EVIDENCE CONSIDERED. On

a trial *de novo* in this court, only such evidence is considered as is competent and proper.

4. **Fraudulent Conveyance:** NOTICE TO VENDEE OF FRAUDULENT INTENT. Where a purchaser has knowledge of such facts and circumstances, tending to show that the vendor intends by the sale to hinder, delay or defraud his creditors, as would put a prudent person on inquiry, and such intent in fact exists, the sale is fraudulent as to the vendee, even though he be the creditor and surety of the vendor, if his prime object in making the purchase is not to secure himself.

*Appeal from Buena Vista Circuit Court.*

TUESDAY, JUNE 21.

THIS is an action in equity, and involves the question as to the validity of the sale of a stock of drugs made by the defendants Pratt & Barney to the defendants Rae & Hunter. There was a decree finding that the sale was void for fraud as to the plaintiffs, who are creditors of Pratt & Barney.

*F. H. Helsell,* for appellants.

*Robinson & Milchrist* and *N. B. Raymond* for appellees.

ROTHROCK, J.—Pratt & Barney were for some time in the drug business at Sioux Rapids. On the 9th day of July, 1885, they executed a chattel mortgage upon their stock of merchandise to the Storm Lake Bank, to secure the payment of $327. On the 10th day of July, 1885, they executed a chattel mortgage upon their stock to D. D. Brooks & Son, to secure the payment of $190, and another chattel mortgage upon the same property to Sarah Scott, to secure the payment of $125; and on the same day they sold their entire stock to Rae & Hunter for the sum of $600, subject to the said mortgages. Within a few days thereafter the plaintiffs, who are creditors of Pratt & Barney, commenced actions at law against the said firm upon their claims, and garnished the mortgagees and Rae & Hunter, the purchasers of the goods. The garnishees answered, denying that they had in their possession any property of Pratt & Barney or that they were in any manner indebted to them. Thereupon the plaintiffs filed their petition, making all of

said parties defendants, in which they alleged that the said mortgages and the sale were all one transaction, and together constituted a general assignment for the benefit of creditors with preferences, and were therefore void. They also averred that the sale of the stock of goods to Rae & Hunter was made with intent to hinder, delay and defraud creditors. Issue was taken upon the petition, and by agreement the causes were tried as in equity, and as one action, and the court decreed that the mortgages were valid, but that the sale was fraudulent and void as to the plaintiffs. It appears from the evidence that, at the time of the sale of the goods, Pratt & Barney were indebted to Rae & Hunter in the sum of $120, and that Rae & Hunter were sureties for them to the Sioux Rapids Bank in the sum of $125. By the purchase of the goods the debt was satisfied, and Rae & Hunter assumed the payment of the $125 for which they were surety, and they assumed the payment of these mortgages upon the stock, and paid to Pratt & Barney $600 in cash. The whole consideration paid for the stock was about $1,492.

It is claimed by counsel for appellant that the record does not show that the plaintiffs at any time recovered judgments against Pratt & Barney upon their claims. We think the showing made upon that question was sufficient. The plaintiffs aver in their petitions that they had recovered judgments; and this is not denied in the answers, and must be regarded as admitted; and the amounts due the plaintiffs at the time of the trial was by stipulation agreed upon at the trial. It is further claimed that the decree of the court below is inconsistent, because it finds that the sale was valid, to the extent of the claims of Rae & Hunter against Pratt & Barney, and void for fraud as to the plaintiffs. This question is not involved in the case. The proof shows, without conflict, that the goods were sufficient in value to pay the mortgages, and to pay all the claims of the plaintiffs and the

1. PLEADING: petition: averment not denied.

2. FRAUDULENT conveyance: good in part.

claim of Rae & Hunter. The sale was good between the parties to it, and all that plaintiffs were entitled to was a decree setting aside the sale so far as it affected them.

Some question is made as to the rulings of the court in receiving certain incompetent evidence. If we were to sus-

3. PRACTICE on appeal: trial de novo: ev'dence considered. tain the appellants' objections to the evidence, and not consider it, the ruling ought not, in our opinion, to lead to a reversal of the decree. The case is triable anew in this court, and we consider such evidence only as is competent and proper.

Having disposed of these minor questions in the case, we will now proceed to consider the main question, which is

4. FRAUDU- LENT convey- ance: notice to vendee of fraudulent intent. whether the sale was in fraud of the creditors. We think that the finding of the circuit court was correct; and, without reviewing the evidence in detail, we will briefly state the facts which we think require an affirmance of the decree.

The firm of Rae & Hunter were not engaged in the drug business, and had no intention, at the time of the purchase, to carry on that branch of trade. They were hardware merchants doing business next door to the drug store in question. They purchased the stock for $1,492 on the same day that two of the mortgages were taken. They made no invoice of the stock before the purchase. They took a bill of sale as soon as the contract was closed, and thought it advisable to file it for record on the same day. Within less than one month they sold the stock to one Howe for $1,927. During the time they held the stock, they put in goods to the amount of $129, and sold goods to the amount of $135. Both Hunter and Rae testified, on the trial, that they made the purchase because they felt friendly to Pratt, and thought there was a speculation in making the purchase. They did not claim nor state that their object in making the purchase was to secure the amount due them and the amount for which they were security for Pratt & Barney. They were therefore mere volunteers. If their purpose had been to secure them-

selves, they would doubtless have taken a mortgage, as the other home creditors did. It was purely a speculative venture. The contract was closed in an hour after a proposition to sell was made. Now, it is true that the evidence shows that Pratt & Barney stated to Rae & Hunter that the $600 paid to them would pay all their debts, and Rae and Hunter both testified that they believed this statement to be true. The fact is that Pratt & Barney were then indebted in the sum of nearly $3,000, and immediately after the sale they notified their creditors by letter that they would be able to pay them in part, and four days afterwards they sent out letters to their creditors advising them that they could not pay more than twenty-five per cent of their debts.

The haste with which the purchase was made, and the bill of sale put on record, and the fact that it was a mere speculation, and the further fact that Rae & Hunter knew that the mortgages had been made, and knew that Pratt & Barney had been pressed for the settlement of claims which they could not pay, should have prompted them to make further inquiry as to the financial standing of Pratt & Barney before closing up their purchase. They were advised by Pratt & Barney that they feared that their creditors would push them The well settled rule of law is that if the purchaser has knowledge of such facts and circumstances tending to show that the debtor intends by the sale to hinder, delay, or defraud creditors as would put a prudent person upon inquiry, the sale is fraudulent. *Zimmerman v. Heinrichs*, 43 Iowa, 260; *Jones v. Hetherington*, 45 Iowa, 681.

It is claimed that there was no evidence showing that the individual members of the firm of Pratt & Barney were insolvent. It is true, no witness so testified upon the trial. But the proof of their offer to pay their creditors twenty-five cents on the dollar in full of their claims, and the declaration that they could pay no more, was sufficient evidence of the insolvency of the partnership and its members.

The decree of the circuit court is AFFIRMED.