Ed McNally, Appellant, v. Emmetsburg National Bank et al., Appellees.

**FRAUDULENT CONVEYANCES:** Confidential Relations—Fraudulent Borrowing to Pay Alimony. Money fraudulently borrowed by an insolvent husband, and paid, shortly prior to the entry of a decree of divorce, to his wife, as alimony and pursuant to a bona-fide contract of settlement of property rights, may not be reached by the

defrauded creditor who loaned the money, when the wife did not know of the husband's insolvency, and did not, directly or indirectly, participate in or have knowledge or notice of the fraudulent borrowing by the husband.

*Appeal from Palo Alto District Court.*—JAMES DeLAND, Judge.

APRIL 3, 1923.

REHEARING DENIED MARCH 14, 1924.

ACTION by a creditor, aided by garnishment. The former wife of the defendant claimed the fund under a settlement of property rights in a divorce proceeding. Her assignee intervened, claiming an interest in said fund. The facts appear in the opinion.—*Affirmed.*

*E. A.* and *W. H. Morling,* for appellant.

*Davidson & Burt* and *Morse & Kennedy,* for appellees.

FAVILLE, J.—Three separate suits were instituted, which, however, were consolidated for purposes of trial, and we will consider the matter as though one action were pending before this court.

The appellant is the creditor of the appellee John H. Wilson. Wilson and the appellee Charlotte B. Beebe were formerly husband and wife. They were married in 1911. No children were born of this marriage. At the time of the marriage, Wilson was 21 years of age, and his wife was younger. He was, at the time, assistant cashier in a bank. In 1914, Wilson and his wife moved to Emmetsburg, where he engaged in the banking business, as cashier and later as president of the Emmetsburg National Bank.

On September 6, 1919, Wilson borrowed $15,000 of the First Trust & Savings Bank of Des Moines, two parties signing with him as sureties. On the same day, he borrowed $2,000 of the First National Bank of Ruthven, and also $3,000 of the Farmers Savings Bank of Ruthven. From some other source, which is not disclosed in the record, Wilson secured an additional $10,000,

making an aggregate of $30,000 in cash in his possession, with which, on September 6, 1919, he purchased a draft on a bank in Chicago. Sometime thereafter, the exact date not appearing in the record, but evidently between the 8th and 18th of September, this draft was delivered by Wilson to his wife. On September 18th, Wilson's wife deposited this draft in the Emmetsburg National Bank, and received as evidence thereof four certificates of deposit, two for $10,000 each and two for $5,000 each. On or about the 8th of September, 1919, Wilson and his wife entered into a written stipulation in regard to the adjustment of alimony, in contemplation of an action for divorce. The material part of said stipulation is as follows:

"That whereas the parties hereto have been living separate and apart for several months, and whereas the first party claims to have a cause of action for divorce against the second party and has expressed his intention of bringing a suit against the second party for divorce from the bonds of matrimony, and whereas the parties hereto, in the event that such suit is commenced, desire to avoid the cost, expense, and inconvenience of trying any issue in regard to property rights and alimony. Now, therefore, the parties hereto do covenant and agree to and with each other as follows:

"That, in the event that the first party shall commence such an action for divorce, and in the event that the court in which such action may be brought shall determine that the first party is entitled to a decree of divorce from the second party, then the parties mutually waive the taking of any testimony in regard to property rights and the property interests of the parties and alimony, and stipulate and agree that the court shall award to the defendant the sum of thirty thousand dollars, to be paid to her by the first party in cash, and shall further award to her all the household furniture, silverware, musical instruments, pictures, and all of the contents of the house heretofore occupied by the parties hereto as their homestead, being the south half Block Four (4) in Call's Addition to Emmetsburg, Iowa, and also the Buick roadster automobile now in the possession of the second party; and the aforesaid money and personal property shall be in full settlement, satisfaction, and discharge of all property rights, claims, and demands of the second party upon the first

party or upon his property, and in full of all claims and demands for alimony, support, and maintenance, temporary or permanent, and in full of all property interests, claims, demands, expenses, attorney fees, and alimony whatsoever; and further, the court shall award to the first party the homestead heretofore occupied by the parties, to wit, the south half of Block Four (4) Call's Addition to the city of Emmetsburg, Iowa, and all the appurtenances thereunto belonging; and all of the real property whatsoever of the parties hereto shall be awarded to the first party as his sole and separate property.''

The $30,000 was paid by Wilson to his wife in pursuance of such agreement. On September 10, 1919, Wilson verified his petition in the divorce action, and the same was filed in the district court of Polk County; and on September 13th, his wife filed an answer, denying all the allegations of the petition as grounds for a divorce. The matter came on for trial before said court, and after the evidence was taken, the trial court declined to enter a decree at that time, and postponed final decree until the next succeeding term of court; and on November 4, 1919, Wilson was granted a divorce from his wife, on the grounds of cruel and inhuman treatment. Said decree also recited that, it being stipulated in open court that the defendant had received and been paid in full all her claims on division of the property and for alimony and support, temporary and permanent, Wilson was discharged from all claims and demands on the part of his wife. The title to the homestead previously occupied by the parties in Emmetsburg was established in the husband by the decree. Within less than sixty days after the granting of said divorce, the wife was married to her present husband, Beebe. In addition to the $30,000 paid to his wife, Wilson also gave her a draft, at or about the same time, for $1,500, which she used in the payment of outstanding bills for family necessities. He also turned over to her the furniture in the home, estimated at from $3,000 to $5,000, and a Buick roadster. This left Wilson, after the entry of the decree of divorce, the owner of the homestead, which was worth about $12,000, and some stocks and real estate contracts, worth in the neighborhood of $7,500, and an automobile. Immediately after the granting of the divorce, the wife

vacated the homestead. Within a few weeks, she went to California.

This action was commenced July 30, 1921. At that time, $20,000 of the original $30,000 paid by Wilson to his wife remained on deposit in her name in the Emmetsburg National Bank. It was held by garnishment. A receiver having been appointed for the said bank, he is made a party to this action. The appellant is the assignee of the parties who loaned Wilson the $20,000 on or about September 6, 1919. By the issues as finally made, the appellant seeks to hold the $20,000 deposited in the bank by Mrs. Beebe, and now in the hands of the receiver, and to subject the same to the satisfaction of his claims against Wilson. The receiver of the bank alleges that Wilson is owing the bank $7,000, and asks that the money in the bank be decreed to belong to Wilson, and that Wilson's indebtedness to the bank be offset against the said deposit. The appellee Charlotte B. Beebe claims the full ownership of the said $20,000, subject to the rights of the Commercial Trust & Savings Bank of Santa Barbara, California, intervener. The last named bank claims an interest in said fund by reason of an assignment of the receiver's certificate as collateral security for the indebtedness of Mrs. Beebe to said bank.

During the progress of the trial, the appellant's assignors, who were the original parties that made the loans to Wilson, intervened in said action, and asked that the said deposit in the bank be adjudged to be held by the receiver in trust for them.

Judgment was entered against Wilson for the amounts due on the several claims against him, and no question as to the correctness of this adjudication is involved in this appeal. The cross-petition of the bank and its receiver, seeking to offset Wilson's indebtedness to the bank against the deposit in question, was dismissed. The court decreed that the funds in the hands of the bank represented by the receiver's certificate were the funds of the appellee Charlotte B. Beebe, subject to the assignment to the intervener, Commercial Trust & Savings Bank of Santa Barbara, California, to secure the indebtedness of the said Charlotte B. Beebe to said bank, and established the claim of said bank against the said funds in the hands of the receiver, to

the extent of the indebtedness of the said Charlotte B. Beebe to said bank.

The ultimate question for our determination is whether or not the creditors of the appellee John H. Wilson, represented by the appellant in this action, can subject the deposit of $20,000, or any portion thereof, in the hands of the receiver of the Emmetsburg National Bank, to the satisfaction of their claims against the said Wilson. The action is in the nature of a creditor's bill, and the real question in the case is whether or not the transfer of the $30,000 from Wilson to his wife was fraudulent and void, as against Wilson's creditors.

I. It is a general rule that, before a transfer of property will be set aside at the instance of creditors as fraudulent, it must appear that such transfer was made with intent on the part of the grantor to hinder, delay, or defraud his creditors, and also that the grantee had actual notice of such intent, or notice of such facts and circumstances as would put him upon inquiry which would lead to a discovery of the fraud, or that he in fact participated in the fraud. It is likewise true that a valuable consideration is ordinarily required, to render valid a conveyance as against creditors of the grantor. *Hinkle v. Downing,* 116 Iowa 693.

Assuming that there is sufficient evidence in the record to warrant a finding that Wilson acted fraudulently as to these creditors in borrowing the money in question from them and paying it to his wife, the first pertinent inquiry is whether or not the wife participated in such fraudulent intent on his part, or had such knowledge or notice thereof as to be charged therewith. We have examined the record with care. It is proper to observe that there is no evidence that Wilson made any representations whatever to appellant's assignors regarding the purpose for which he was borrowing the money which he secured from them. They evidently regarded him as solvent. One of them testified:

"I never asked him about any of the notes,—what he was going to use the money for; because he was in business, and was always a good, prompt, careful fellow."

There is also nothing in the record to show that the wife had any knowledge or information that Wilson contemplated

borrowing money from these creditors, or that he had, in fact, borrowed the same. The evidence of knowledge on her part of the property that was owned by Wilson and of the extent of his indebtedness in general was uncertain and vague. It is quite evident from the record that the married life of these people had not been characterized by that full confidence and complete co-operation that usually exists between husband and wife. The appellee testified that she knew only to a certain extent of what property Wilson owned, and that she always thought him a successful and prosperous business man. She testified that Wilson never talked his business over with her; that she knew that he borrowed money, as every business man does, but did not know how much he borrowed. Both Wilson and Mrs. Beebe were subjected to a searching examination in regard to this transaction.

There is, however, no evidence in the record that would warrant a finding of direct and actual participation by the wife in a fraudulent scheme by which Wilson should borrow money from these creditors and pay it over to her. Fraud is not to be presumed, and the facts and circumstances disclosed by the record in this case are insufficient to establish that the transfer of the money by Wilson to his wife was in pursuance of a fraudulent scheme to hinder, delay, defeat, or defraud his creditors, directly and actively participated in by her. As bearing on the question, see *Jones v. Brandt,* 59 Iowa 332; *Witham v. Blood,* 124 Iowa 695; *Muir v. Miller,* 103 Iowa 127; *Atkinson v. McNider,* 130 Iowa 281; *Crenshaw v. Halvorson,* 183 Iowa 148; *Keosauqua State Bank v. Hartman,* 184 Iowa 961.

II. However, it is obvious that direct proof of participation in a fraudulent scheme to hinder, delay, or defraud creditors is not readily obtainable, and courts of equity will scrutinize the facts and circumstances surrounding a transaction that is called in question, to ascertain whether the same was made in good faith. There are certain well recognized "badges of fraud" that a court should always examine in such a case. In this case, it is contended that the transfer was voluntary, and without any valid and legal consideration.

There is no dispute, under the evidence, that the money in question was transferred from Wilson to his wife as a settlement

of alimony, in contemplation of the divorce which was subsequently procured. If the conveyance was wholly voluntary, and was in the nature of a gift, and was made at a time when Wilson was insolvent, a court of equity would have the undoubted power to set aside such gift, and subject the property to the satisfaction of the husband's indebtedness. *Kolb v. Mall*, 187 Iowa 193. But this fund was not transferred voluntarily, and as a gift. It was made in pursuance of a stipulation of settlement of property rights between parties about to engage in litigation for a divorce. Such contracts are not invalid *per se*. In *Schooley v. Schooley*, 184 Iowa 835, we said:

"Marriage is a civil contract between the parties, a contract which implies an obligation for support; and it is in recognition of such implied contract that alimony is allowed. It remains unliquidated, however, until the court has fixed it by judgment; but thereafter, it would seem that it must be regarded as a debt by contract, as well as by judgment."

In *Martin v. Martin*, 65 Iowa 255, it was held that a contract for the settlement of alimony was not prohibited by the statute, and that a wife's right to support during the existence of the marriage relation was a demand, and enforcible as money demands are enforced.

It has frequently been recognized that a husband and wife may make a compromise of their property rights, even before a divorce is granted, where the settlement is made in good faith, and in contemplation of a divorce, and where the divorce is afterward granted. *Martin v. Martin*, supra; *Nieukirk v. Nieukirk*, 84 Iowa 367; *Kinkead v. Peet*, 136 Iowa 590; *Gould v. Gunn*, 161 Iowa 155; *State Bank v. Wolford*, 178 Iowa 89.

We are not concerned in this action with any question of the rights of the respective parties as to such a contract between themselves. The only question at this point is whether or not such a contract, when entered into with good faith between the parties, and subsequently carried out by the institution of divorce proceedings and the procurement of a divorce and the transfer of the property as provided in the contract, will be upheld, when fully executed, as having been supported by a valuable consideration. It was not "a, voluntary payment," under these conditions. It is not void for want of a consideration

which the law will recognize. In a sense, it may properly be said that the wife was the creditor of her husband. She was entitled to all the rights of support that belonged to her under the marriage relation. Whether she had forfeited such rights was a matter for the determination of the divorce court, and not for inquiry in a collateral proceeding. The husband recognized his obligation to her in making the contract and paying her the money as he did. This he had a legal right to do, and there was a sufficient legal consideration to support such contract. In other words, it was not a voluntary gift, without consideration.

The case is not one like *Barngrover v. Pettigrew,* 128 Iowa 533, or *Roten v. Tesdell & Mackaman,* 195 Iowa 1329, where a contract is entered into between parties who do not stand in the relation of husband and wife, for the purpose of procuring a divorce. Such contracts are against public policy and void; but in the instant case, the contract was one of settlement of property rights between the husband and the wife.

III. The point is stressed in argument that the money paid by Wilson to his wife was agreed to be paid to her before the action for divorce was commenced, and was actually paid to her before the divorce was granted. These facts are proper to take into consideration in determining the question as to whether the payment by Wilson to his wife, under these circumstances, was fraudulent and can be impeached because thereof, at the instance of Wilson's creditors. The fact that the agreement of settlement of the property rights was made before the divorce papers were actually filed is not a sufficient badge of fraud to impeach the validity of the transaction. There is no conflict in the evidence that said agreement of settlement was made, not as a gift, but in contemplation of the institution of the divorce proceedings, which were started promptly thereafter and carried to a final determination.

Nor is it a conclusive circumstance establishing fraud that the money was paid by Wilson to his wife, and deposited by her, and remained in the bank at Emmetsburg until some time after the divorce was granted, and that, in fact, $20,000 of the amount is still there. Whether Wilson or his creditors might have recovered the same if no divorce proceedings had been

instituted and no divorce granted, on the ground that it was a voluntary conveyance or gift, is not the question before us. The agreement of settlement was made in contemplation of the institution of divorce proceedings, and as a settlement of the property rights between the parties and of the acknowledged obligation which the husband owed to his wife. It therefore was not a voluntary gift. The divorce suit having been started, the fact that Wilson paid the money to his wife before the day that the decree was entered, in fulfillment of the previous agreement between them, is not sufficient, of itself, to impeach the transfer.

IV. It is urged that the amount of the payment by Wilson to his wife, in view of his circumstances, was so exorbitant and excessive as to be of itself a badge of fraud.

Unquestionably, Wilson was heavily indebted at the time he borrowed this money from appellant's assignors and turned the same over to his wife. It appears from the record that the parties had been living in a somewhat luxurious manner. The evidence tends to show that the home and its furnishings were quite in keeping with his station in life as the president of a national bank in a town the size of Emmetsburg. He had the general outward appearance, at least, of prosperity. Appellant's assignors regarded him as successful and prosperous.

The evidence tends to show that the wife was not in good health, that she had no independent means, and that she claimed that she was in need of the amount agreed upon for her support. The decree of divorce recites:

"And the parties in open court having stipulated that the defendant has duly received and been fully paid in full all her claims on division of property and for alimony and support, temporary and permanent, and that all her claims in the premises have been fully satisfied, and that the real property hereinafter set forth shall be set over to the plaintiff in severalty, and that that and all other property of the plaintiff shall be and is discharged from all claims and demands whatsoever of the defendant."

The decree also quieted the title of Wilson in the homestead.

In this proceeding, we must indulge in the presumption that the recitals of the divorce decree that the court had been "fully advised in the premises" are correct, and that the recital of

approval of the stipulation as to property rights was entered advisedly. While said decree is not *res adjudicata* as to this appellant or his assignors, it is entitled to due consideration as a circumstance bearing upon the *bona fides* of the transaction under consideration.

In the light of all the facts and circumstances disclosed in the record, we do not think that the amount of this payment, which was apparently confirmed and approved by the decree of divorce, is sufficient to brand the transaction as fraudulent on the part of the appellee Mrs. Beebe.

V. It appears that Wilson was insolvent when the transfer was made. It was made to his wife. Under such circumstances, it is said that a transfer of property is presumptively fraudulent, and that the burden rests upon the wife to show that the transfer was not voluntary, and that it was without fraud on her part. *Richardson v. Richardson*, 134 Iowa 242; *Gaar, Scott & Co. v. Hart*, 77 Iowa 597; *Redhead, Wellslager & Co. v. Pratt & Barney*, 72 Iowa 99. But even applying this rule to the instant case, we do not think that the presumption can prevail, under the disclosed facts. The transfer of the money was certainly not as a trust from which the husband might expect to profit in the future. The contrary is apparent. Although the parties were still husband and wife, in this matter involving the adjustment of property rights in contemplation of an immediate divorce it may with propriety be said that they were "dealing at arm's length." Under the facts and circumstances of the case, the relationship of husband and wife then existing between the parties is not sufficient to impeach the validity of the transaction or to impress a trust upon the fund in the hands of the appellee Mrs. Beebe.

VI. The removal of the wife to California and her marriage to a former citizen of Emmetsburg within 55 days after the granting of the divorce does not establish fraud on her part in making the settlement of property rights, nor is it a circumstance sufficient to impeach the *bona fides* of that transaction. However discreditable and reprehensible the conduct of Wilson may have been in borrowing this money from appellant's assignors and using it in the manner in which he did, it is not

sufficient to set aside the transfer of the money in the hands of the appellee Mrs. Beebe.

The case presents some unusual and quite extraordinary features. Upon the question involved, we reach the same conclusion as did the trial court.

Counsel for the Emmetsburg National Bank and its receiver contend that the decree should not have provided for interest on the receiver's certificate after the date of the appointment of the receiver. This matter was not called to the attention of the trial court, and the contention in this respect is conceded in argument. The decree will be modified to this extent; otherwise, it will be in all respects affirmed. It is so ordered.— *Affirmed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.