J. A. Baker, v. Roscoe Swearengin, Administrator of the Estate of McD. Swearengin, Deceased, Appellant.—No. 38520.—174 S. W., (2d) 823.

Division One, November 1, 1943.

1028

*John M. Bragg* for appellant.

*Omer E. Brown* and *W. L. Vandeventer* for respondent.

GANTT, J.—This is a transfer to this court by a court of appeals on the dissent of one of the judges of that court. (168 S. W. 2d 473.) The action is on a check for $800.00 executed by McD. Swearengin who died a few hours after signing the check. On presentation of the check after the death of Swearengin, the bank refused payment. Later the bank delivered the $800.00 to the administrator of Swearengin's estate. It was all the money on deposit with the bank to the credit of Swearengin at the time he executed the check.

At the close of the evidence, the court directed a verdict for the plaintiff for $800.00 with interest. Judgment was entered on the verdict and defendant appealed.

The petition follows: "Comes now the plaintiff and for his cause of action shows to the Court that Roscoe Swearengin is the duly appointed, qualified and acting Administrator of the estate of McD. Swearengin in the Probate Court of Douglas County, Missouri, and that said estate is in the process of administration.

"Plaintiff states that on the 31st day of October, 1940, McD. Swearengin executed his personal check for the sum of $800.00 drawn on the Ozark Bank, of Ozark, Missouri, for his entire account in said sum of $800.00, which said amount was on deposit to his account in the Ozark Bank at Ozark, Missouri, said check further containing the provision:

1030

"'For the purpose of obtaining payment of this check I hereby represent that the amount stated therein is on deposit in said bank in my name subject to this check and is hereby assigned to the payee or holder hereof,' and being signed by McD. Swearengin. A copy of said check being hereto attached and marked 'Exhibit A'. That said check was duly presented to the Ozark Bank and that said bank refused to pay said $800.00 to said plaintiff.

"Plaintiff states that the said McD. Swearengin did theretofore obtain for his mother, Amanda Adeline Swearengin, aged 93 and very infirm in body and mind and health, a home with the plaintiff herein at Springfield, Missouri, and that the said McD. Swearengin, now deceased, after obtaining for his mother, the said Amanda Adeline Swearengin, a home and place of abode with the plaintiff herein, on the 7th day of March, 1938, agreed with the plaintiff herein that the said plaintiff should care for and provide for his said mother until she died, for which he would be compensated by the said McD. Swearengin; that carrying out the provisions of said contract so made and entered into, the said McD. Swearengin agreed to and did execute his personal check and transfer to the said J. A. Baker the sum of $800.00 in payment for said services rendered and to be rendered on behalf of his mother, the said Amanda Adeline Swearengin; that said plaintiff did support and care for the said Amanda Adeline Swearengin until her death on the 1st day of January 1941.

"That thereafter, the defendant Roscoe Swearengin, Administrator, as aforesaid, on the 19th day of December, 1940, obtained possession of said $800.00 from the Ozark Bank, as aforesaid, which had been assigned to plaintiff and that said $800.00 was placed in and now is a part of the assets of the estate of McD. Swearengin, deceased.

"WHEREFORE, by reason of the premises, plaintiff states that the estate of McD. Swearengin is indebted to him in the sum of $800.00, together with interest at the rate of 6% on said sum from November 1, 1940, to date, for which he prays judgment, together with his costs."

The answer admitted that defendant was the administrator of said estate and denied generally the other allegations of the petition.

It will be noted that plaintiff pleads the facts relied on to show a consideration for the check. In other words, he did not rely on the presumption that the check was given for a valuable consideration. Furthermore, after the check was in evidence, he assumed the burden of evidence by calling three or more witnesses who gave testimony on the issue of consideration. The presumption of a valuable consideration vanished on plaintiff's introduction of the evidence on that issue. [State ex rel. Strohfeld v. Cox, 325 Mo. 901, 907, 30 S. W. 2d 462.] The defendant introduced no evidence except

the testimony of a court reporter which tended to contradict evidence given by the plaintiff.

In view of the question presented by the record, it is of no consequence whether the petition states an action on an implied warranty of the drawer that the check would be paid by the bank (Fisher v. Bagnell, 194 Mo. App. 581, 586, 186 S. W. 1097), or whether the petition states an [825] action for money had and received on the theory of an assignment of the money in the bank to the payee by the execution and delivery of the check.

Defendant contends that the court should have sustained the demurrer at the close of the evidence on the theory that the contract relied on by plaintiff was not in writing, and for that reason void under the statute of frauds. The trial court correctly ruled this contention against defendant. The alleged contract is not an agreement to answer for the debt of another. As alleged in the petition, it is a contract whereby Swearengin agreed to pay plaintiff for his services in caring for Swearengin's mother.

Defendant also contends that the court should have overruled plaintiff's motion for a directed verdict. He argues that the evidence authorized a finding by the jury that McD. Swearengin did not contract with plaintiff to pay for the care of his mother, and for that reason there was no consideration for the check. There was evidence as follows:

Ella Baker, niece of McD. Swearengin, testified as follows: I am plaintiff's wife and the granddaughter of Amanda Swearengin, who is McD. Swearengin's mother. I lived with my grandmother for twelve years and until I married in 1914, at the age of seventeen. In 1938, I lived in Springfield. On March 7, 1938, my grandmother, ninety years of age, came to Springfield to live with me. She died on Jan. 1, 1941, at the age of ninety-three. If she had lived until March 7, 1941, she would have lived with us three years. She died two months after the death of McD. Swearengin. About two months after my grandmother came to live with us, McD. Swearengin came to visit her. At that time he told my husband that he would reward him for caring for his (Swearengin's) mother. Grandmother Swearengin lived in the country with her daughter Martha Trotter, who was seventy-one years of age before she came to our home in Springfield. She continued to live with us until her death, except that she visited in Taney County with Uncle McD. Swearengin for a few days. When she first came to our home she was able to take care of herself, although she had smothering spells. I gave her medicine, did her ironing and washing and she ate with the family. Usually she was able to eat at the table. I did not leave her alone for any extended time. At times, for seven or eight months before her death, she had no control of her kidneys or bowels. Every day I cleaned up after her for one or both of these troubles. She slept in

a room next to us and I took care of her bed. She washed dishes and did embroidery while sitting in a chair. She did very little walking outside of the house. When she first came she was able to take care of herself. She would get better and then get worse. McD. Swearengin came to our home to visit his mother occasionally. He told me that he was going to pay me for caring for my grandmother. I saw him at the hospital in Springfield a few days before he died. I heard him tell my husband to bring a check; that he wanted to give him the money in the bank for taking care of grandmother. At the time grandmother was living with her daughter Martha Trotter in the country she was drawing a pension. She continued to draw a pension of from twelve to eighteen dollars a month after she came to our home and until her death. She gave me five dollars sometimes, and sometimes gave me ten dollars for caring for her. Sometimes she wouldn't have pension money to give me. Some of the pension money went for medicine, doctor bills or material and thread to embroider. All the time she was at our home she did embroider work and her eyesight was good until she died. At the time my husband and I brought her to our home we had no idea that anyone would pay us for taking care of her. I never heard McD. Swearengin tell my husband that he would reward him for caring for grandmother but one time. The doctor only came to our home once to see grandmother. I did not take her to his office very many times. We paid the doctor and medicine bill the first time amounting to $3.00. After that grandmother paid the doctor and for medicine.

Plaintiff testified as follows: Luther Swearengin, a son of Amanda Swearengin, brought her to my house. She was poorly and sick. My wife was at Martha Trotter's in the country two or three days or weeks at a time caring for her. She wouldn't more than get home when Mrs. Trotter would send for her to come back. It was inconvenient for her to go down there. It was for our convenience that we had her brought to our home to care for her. I had no conversation with McD. Swearengin about moving his mother to our home. He came to our home to see his mother [826] in about two months and stated that he would pay me for taking care of her. At first he said that he would see that I was rewarded. He did not state when I would be rewarded or paid or in what manner I would be rewarded or paid. We entered into no arrangement about how much he would pay me or a contract of any kind. He told me he would pay me or see that I was paid. About a year thereafter he again told me the same thing. At this time we were at his home in Taney County. He said: "I will be up there in a few days and I am going to pay you." The first time he stated he would reward me or see that I was rewarded. He did not exactly say he would pay me. He said he would see that I was rewarded. At the hospital when he asked me

to bring him a check, he said that I was better to him than any brother and better to his mother than anybody, and for that reason he wanted to give me the check. At the time he gave me the check he said it was to pay for keeping his mother.

Plaintiff also testified that he did not remember whether or not at the trial of another case he testified that on a visit to the hospital McD. Swearengin stated to him that he had some money in the Ozark Bank, and if anything happened to him (Swearengin), he wanted him (plaintiff) to have it; and that he (plaintiff) answered: "I don't want any of your money, Mack"; and that he (Swearengin) said: "If anything happens to me I want you to have it, and if I get well I will know where it is."

Joe Swearengin, a brother of McD. Swearengin, testified that about a week before McD. died, he and McD. conferred with reference to paying the Bakers for their services in caring for mother. McD. said that "we should pay them, and he wanted to make arrangements to pay them for taking good care of her". Later he told me at the hospital that he had made arrangements with Ella (Mrs. Baker) to take care of mother.

The court reporter (Oscar Sanders), in testifying (from his notes) for the defendant, stated that at the trial of another case the plaintiff testified that McD. Swearengin stated to him that he had some money in the Ozark Bank and if anything happened to him (Swearengin) he wanted plaintiff to have it; and that he (plaintiff) answered: "I don't want any of your money Mack"; and that he (Swearengin) said: "If anything happens to me I want you to have it, and if I get well, I will know where it is."

On the above stated oral evidence, we think the issue of contract or no contract between McD. Swearengin and the plaintiff should have been submitted to the jury. The general rule may be stated as follows: "Where a party asserts the affirmative of a proposition and proof of it is necessary to sustain his point, the truth and weight of his evidence, though uncontradicted, is for the jury." [State ex rel. Strohfeld v. Cox, supra, l. c. 908.]

The case of Home Trust Co. v. Josephson, 339 Mo. 170, 95 S. W. 2d 1148, cited by plaintiff is not in point on the facts. The judgment is reversed and the cause remanded. All concur.