Louis Wagner, Appellant, v. Rhea Mertel Shelly, Executrix of the Estate of Solon S. Shelly, deceased, Respondent.—235 S. W. 2d 414.

Kansas City Court of Appeals. Opinion delivered December 14, 1950.

*Walter A. Raymond* for appellant.

*Raymond E. Martin* and *W. Raleigh Gough* for respondent.

DEW, P. J.—The appellant, an attorney, was plaintiff in the trial court and filed this action in two counts to recover from Solon S. Shelly, $1000 in each count, alleged to be, respectively, fees agreed to between the plaintiff and defendant for the plaintiff's legal services

in each of two successive divorce actions prepared and filed by the plaintiff for one Helen R. Anderson against her husband George N. Anderson. Pending the action, defendant died and his executrix was substituted as defendant. At the trial the court, without a jury, found the issues for the defendant on both counts and judgment was rendered accordingly. The plaintiff has appealed.

According to the plaintiff's evidence Solon S. Shelly operated an automobile business in Kansas City, Missouri, and prior to October, 1944, had been divorced from his wife. He later became interested in one Helen R. Anderson, who was separated from her husband and "kept company" with her and expressed to a close friend that he loved Mrs. Anderson and desired to marry her if she got a divorce. In October, 1944, he called at the home of this friend, John Lock, and in the course of their conversation there regarding Mrs. Anderson, and in the presence of other guests, Mr. Shelly inquired of Mr. Lock if the latter knew of anyone "who could get the divorce". Mr. Lock recommended the plaintiff, his own attorney, whom he called by telephone at plaintiff's residence. Mr. Shelly then took over the telephone conversation and was heard to inquire of the plaintiff if "he could get a divorce for a friend of his", and talked about the plaintiff representing Mrs. Anderson in a proposed divorce action against her husband, and Shelly was heard to say he would "take care of the fees on it to get a divorce". Shelly then or later told Mr. Lock the fee was to be $1000. Plaintiff had not known either Shelly or Mrs. Anderson previous to these transactions. Shelly said it had cost him around $200,000 to get his own divorce and "this thing was what he wanted and it was cheap enough if he could get it done".

Thereafter Mrs. Anderson called at the plaintiff's office, executed the divorce petition prepared by the plaintiff in her behalf, and plaintiff filed the petition and caused personal service to be obtained on Mr. Anderson. Plaintiff later discussed with the judge before whom the divorce case was to be heard the possibility of a special setting to avoid publicity. Plaintiff listed the divorce case for trial, but on the day set for the hearing, an answer was filed and plaintiff was advised that Mrs. Anderson had been living with her husband ever since the divorce suit was instituted, and plaintiff dismissed the suit for that reason.

A month or so later, Mr. Shelly again called at Mr. Lock's house and told him that he understood Mr. Anderson had met Mrs. Anderson in Chicago, and that they had lived there for some time since the divorce action was filed, and that plaintiff had advised Mr. Shelly that the Anderson suit would have to be "filed again and gone over again", and that he (plaintiff) wants another $1000 for the second case". Shelly asked Mr. Lock what he thought of it. Lock replied: "It is up to you. If it is worth it, pay it, if not, forget it". Shelly answered: "This is something I want. If this will get it, I'm willing

to pay it". Mr. Shelly then retained plaintiff to file a second divorce action for Mrs. Anderson.

Later Mrs. Anderson again called at the plaintiff's office and she, too, was advised by the plaintiff that it would be necessary to start new proceedings. A new petition was prepared and Mrs. Anderson executed it. Plaintiff filed the second petition, obtained a signed entry of appearance from Mr. Anderson, and again talked with the trial judge about a private hearing of the Anderson case. Some time later Shelly told Mr. Lock that he and Mrs. Anderson were "not getting along so good", and witness Lock testified that he "guessed Louis had called him (Shelly) up and said he wanted his money", and Shelly said: "The devil with him. I am not going to pay him, let him sue me". Thereafter Mrs. Anderson discharged the plaintiff as her attorney, and plaintiff filed a withdrawal in the case as attorney for her. New counsel later appeared for Mrs. Anderson in the second divorce action and a default decree of divorce was granted her.

Plaintiff at all times stood ready, willing and able to prosecute the suits to judgment. Plaintiff received no compensation from any source for any of his services in connection with either divorce action. Mr. Shelly did not marry Mrs. Anderson after the divorce, but during his last illness, he remarried his former wife, who is his widow, his executrix and the present respondent herein.

The answer in this case is a general denial as to each count and, further, alleges that if the contracts were made for services, as stated in said counts, respectively, the same were designed to promote or facilitate the granting of a divorce, dissolving the marriage between Helen R. Anderson and George N. Anderson, and therefore against public policy and void.

The respondent offered no evidence herein except the records of the two divorce actions which showed that the first divorce suit was filed November 4, 1944; summons served November 6, 1944, answer filed January 10, 1945, and cause dismissed January 16, 1945. The records further showed the second divorce action was filed January 20, 1945, entry of appearance filed January 22, 1945, withdrawal by plaintiff as attorney for Mrs. Anderson, and appearance of new counsel on January 31, 1945, and a default decree of divorce in favor of Mrs. Anderson on February 20, 1945.

The court made a general finding for the defendant in this case and no specific findings were given or requested. Following a general judgment entered in behalf of defendant, plaintiff's motion for new trial was filed and overruled.

In substance, the appellant contends that under Section 114 (d) of the Civil Code, this court is authorized to review the law and the evidence as in an action of an equitable nature and will render such decree as should have been rendered by the trial court; that the agreements between plaintiff and Shelly were susceptible of a construction making them legal and should be so construed; that the plaintiff, be-

ing ready, able and willing to try each divorce action and prevented from so doing by the actions of Shelly and Mrs. Anderson, is, nevertheless, entitled to the agreed compensation as if he had fully performed his services in each case; that the contracts between plaintiff and Shelly were not void and unenforceable as tending to facilitate a divorce between Helen R. Anderson and her husband.

The respondent asserts that if the alleged parol agreements between Shelly and the plaintiff were collateral undertakings to pay attorney fees incurred by Mrs. Anderson, they were void under the statute of frauds; that the plaintiff failed to prove performance of either contract as made, both being in the nature of a contingent-fee contract conditioned upon the procuring of a divorce for Mrs. Anderson; that the alleged contracts are void as against public policy, being in the nature of maintenance agreements and having for their purpose the facilitating of the granting of a divorce between the Andersons.

In his reply brief the appellant takes the stand that the statute of frauds is inapplicable, the contracts being original undertakings on the part of Solon S. Shelly; that full and complete performance of the plaintiff's services were prevented by the acts of Mr. Shelly and Mrs. Anderson; and that, nevertheless, plaintiff is entitled to recover as if he had fully performed, and denies that the contracts are contingent or maintenance contracts or void as against public policy.

The evidence in this case does not support the theory that the agreements were collateral or that they undertook to obligate Mr. Shelly to pay the debt of another, but plainly establishes the fact that they were direct and original undertakings between Shelly and the plaintiff, and were not void under the statute of frauds because not in writing. Section 3354, R. S. Mo., 1939; Steele v. Ancient Order of Pyramids, 125 Mo. App. 680, 103 S. W. 108; Baker v. Swearengin, 351 Mo. 102%, 174 S. W. 2d 823.

If, however, the agreements were, by their nature, illegal, unenforceable and void as contrary to public policy, then the other points made by the appellant would have no application and the parties must be left in the position in which the court finds them.

The evidence of the plaintiff plainly discloses that each of the agreements made by Mr. Shelly with the plaintiff was that plaintiff, as attorney, should institute an action for divorce for Helen R. Anderson against her husband George N. Anderson and would procure therein a divorce, the fee for such legal services to be paid by Mr. Shelly. The evidence is not disputed that Shelly had several times expressed his affection for Mrs. Anderson, was keeping company with her and desired to marry her; that his first inquiry was for an attorney "who could get the divorce"; that he asked the plaintiff if he "could get a divorce for a friend of his"; that he would "take care of the fee on it to get the divorce"; that "this is something I want, if this will get it, I'm willing to pay it"; that the fee for

"this divorce" was to be $1000 in each case; that it was cheap enough "if he could get it done". It is clear that Shelly's interest in the proposed divorce actions was nothing less than a dissolution of the marriage relation between Helen R. Anderson and her husband in order that he (Shelly) could marry her, and he was willing to and did employ plaintiff to procure such divorce at Shelly's expense.

It is said in 7 C. J. S. pp. 616-617, Section 235:

"As a general rule, if the object of a contract is to divorce man and wife, or to facilitate that result, the agreement is against public policy and void, regardless of whether the contract is supported by other and valid considerations".

Even where the husband and wife enter upon agreements conditioned upon the institution of or refraining from the defense to a divorce action, such agreements are held void as against public policy. Jones v. Jones, 325 Mo. 1037, 1044, 30 S. W. 2d 49, 53; Blank v. Nohl, 112 Mo. 159, 19 S. W. 65. Marriage is more than a mere civil contract. It is a sacred relation and forms a material part of the very foundation of civilized society. Society, represented by the state, has an interest in every marriage and is a party to every action for divorce. Contracts made by a stranger to a marriage relationship, conditioned upon, intended or calculated to facilitate the dissolution of such marriage status, are held void as contrary to sound public policy. McNally v. Emmetsburg Nat. Bank, 197 Iowa 602, 192 N. W. 925; Barngrover, et al. v. Pettigrew, 128 Iowa 533, 104 N. W. 904.

In Gould v. Gould, 27 N. Y. S. 2d 54, this principle is well considered. In that case a husband and wife had been separated and the husband had agreed in writing to pay his wife a certain sum each month for a fixed period for her support and maintenance. The father of the husband guaranteed these payments in writing. One of the conditions of the written guaranty was that the daughter-in-law of the defendant obtain a divorce from her husband within four months from the separation agreement and to bring the action immediately in the state of Nevada. Because of her husband's default in such agreed payments the wife brought suit against her father-in-law on the latter's written guaranty. In holding the guaranty void, the court said:

"Patently, the contract is intended to facilitate the obtaining of a divorce and to promote the dissolution of the marriage relationship between plaintiff and defendant's son. It is well settled that such a contract is void as against public policy. There is an intimate connection between the sanctity of the marriage relationship and the well-being of society. The law favors marriage and it does not sanction contracts designed to promote its dissolution by lending itself to their enforcement".

Furthermore, the possibility of a reconciliation between a husband and wife after separation should not be hindered or frustrated by

the conduct of third parties, and their commitments to the contrary are repugnant to the public interest. When a stranger to a marriage contract agrees with an attorney to pay him to procure a dissolution of such marriage, he is not only facilitating the divorce, but the attorney thereby acquires a personal interest in the dissolution as would tend to prevent him from exercising his ethical and professional duty of encouraging a reconciliation. 17 C. J. S. p. 618, Section 235.

In the instant case, despite the first agreement between plaintiff and Mr. Shelly, and the first divorce action that ensued, Mrs. Anderson did become reconciled with her husband, although for only a few weeks, and plaintiff dismissed her first case for that reason. Her second case, as far as the record shows, was begun at the instance and intended to be at the expense of Mr. Shelly, the plaintiff to receive a like fee from Shelly as agreed to in the first case and upon the same terms. Although Mrs. Anderson later pursued the second case to judgment in her own favor, she did so only after making her own choice of legal counsel.

It is our opinion that both agreements made by the plaintiff on which he seeks here to recover were void as against public policy. In such case the court will leave the parties in the position in which they have thus placed themselves. Judgment affirmed. All concur.