WILLIAM E. BYERS, v. CLARENCE M. BUETTNER AND HELEN M. BUETTNER.—191 S. W. (2d) 339.

Kansas City Court of Appeals.   December 3, 1945.

*David M. Proctor* for appellants.

*Wm. G. Boatright* for respondent.

DEW, J.—This is a suit in equity in two counts. In the first count of plaintiff's petition he alleged the making of a contract of sale to defendants of plaintiff's residence property described; that the purchase price provided therein was $23,665, of which $1000 in cash was paid at the execution of the contract, as agreed. The petition describes the closing of the transaction, at which time, it is alleged, receipt was given for the balance of the purchase price and a warranty deed was delivered, since recorded, reciting consideration of $1.00 and other valuable considerations, duly received; that at the closing of the deal, currency purporting to be the balance of the sale price, was handed to the plaintiff by defendants and included a package of bills, all of the same size, shape, color and general appearance, represented and stated by defendants to contain 22 bills of $1000 denomination each; that all the parties counted the same and found the package to contain 22 in number, but that a few minutes after the defendants had left plaintiff's office with receipt and deed aforesaid, plaintiff discovered, on recount, that in the package represented to contain only $1000 bills, one was found to be of $100 denomination; that promptly on the same day and at divers times thereafter plaintiff requested defendants to rectify said mistake and to pay to plaintiff the remaining $900 of said purchase price, which defendants have refused and failed to do. Plaintiff prays reformation of said receipt to show receipt of $21,765 on March 14, 1944, instead of $22,665, and that the warranty deed be reformed to show that of the purchase price of $23,665, plaintiff had received $22,765.

In the second count of plaintiff's petition, by reference, he restates the facts of Count I, and alleges that by reason of said warranty deed, the defendants are now vested with legal title to the real estate in question, have possession thereof, and that the plaintiff is entitled to a vendor's lien on said property to secure the amount of $900 due him as the balance of the unpaid purchase price, with interest from March 14, 1944. Plaintiff accordingly prays for a decree finding $900 due on the agreed purchase price, and judgment for same, and that the decree further declare a vendor's lien in plaintiff's behalf on said

real estate for the payment of said $900, with interest, aforesaid, and that the court order and adjudge said lien to be foreclosed as the court shall direct to satisfy same, together with costs and general relief.

Defendants, by their answer to plaintiff's Count I, allege the payment of $1000 in cash at the execution of the contract, the payment of $22,665 in currency to plaintiff at the closing of the deal, the full balance due, but deny that they at that time represented or stated to the plaintiff the amount of currency in the package of bills delivered to the plaintiff. Defendants further deny any mistake in counting the aforesaid package of bills or currency, and allege that on the day in question they counted out and obtained from their safety deposit box and handed and delivered to the plaintiff the total sum of $22,665 in currency; that said currency was three times counted by the plaintiff in their presence, and in the presence of others; that whatever loss occurred took place after the delivery of said currency by the defendants to the plaintiff. Defendants admit plaintiff's demand on them for further payments of $900, and their refusal to pay the same, and deny plaintiff's right to reformation of receipt and deed as prayed for in the petition.

Defendants' answer to plaintiff's Count II denies that they paid to the plaintiff on March 14, 1944, only $21,765, but alleges that they in fact paid $22,665, making a total of $23,665, the full purchase price agreed upon. They admit being vested with legal title to the property and their possession thereof, and deny plaintiff's right to a vendor's lien for any sum.

Defendants further set up in their answer a counterclaim, alleging that the plaintiff's suit for reformation of receipt and deed described, and for vendor's lien was and is a wrongful, unlawful and malicious slander of defendants' title to said property, whereby defendants have been damaged. Defendants pray for judgment for $2500 actual damages and for $2500 punitive damages.

The court in its decree found that on March 14, 1944, defendants delivered to plaintiff what was represented by them and believed by plaintiff to be $22,665 in currency; that in truth and in fact by mutual mistake by plaintiff and defendants in counting said currency the actual amount so delivered was $21,765, leaving $900 balance due of the agreed purchase price; that the plaintiff, relying and acting upon the belief that said purchase price had been paid, executed and delivered the deed referred to in the pleadings which has since been recorded; that the warranty deed recites payment of the full agreed consideration, and that a receipt contemporaneously given with the deed recited the payment and delivery to the plaintiff on that date of $22,665, balance of the agreed purchase price; that on account of said mutual mistake plaintiff is entitled to have said warranty deed and receipt reformed to speak the truth and have judgment for the

balance of the agreed purchase price, and for establishment of vendor's lien on said property. The court found all the issues on both counts of the petition in favor of plaintiff and against defendants, and in favor of plaintiff on defendants' counterclaim, whereupon it was decreed and adjudged on the first count of plaintiff's petition that the the warranty deed and receipt be reformed so as to recite and show that $900 of the agreed purchase price for said property had not been paid, and on the second count it was adjudged that plaintiff have judgment for $900 against the defendants with interest from March 14, 1944, and that a vendor's lien be established in plaintiff's favor on said property for said unpaid purchase price, with interest and costs; that in event said $900, with interest and costs, be not paid within thirty days after the judgment becomes final, said vendor's lien to be foreclosed by sale of said property at public vendue to the highest bidder at the north front door of the Jackson County Court House in Kansas City, Missouri, said sale to be conducted by the sheriff of said county and advertised in the manner and for the time as required by statutes for foreclosure of mortgages and deeds of trust. It was further adjudged that the defendants take nothing by their counterclaim, and that the same be dismissed with prejudice. The costs were assessed against the defendants, plaintiff to have writ of execution or any other writ or process necessary to enforce said judgment and decree.

The material dispute in the case is whether or not on March 14, 1944, at the closing of the transaction of sale in plaintiff's office, a package handed to plaintiff by defendants as part of the agreed balance due on the purchase price for the real estate sold purporting to contain 22 bills of $1000 denomination each, included one bill of $100 denomination instead of a $1000 bill, making the package total $900 short of the agreed balance due. Other than the said $1000 bills, which plaintiff alleged to have been in a separate package, there were admittedly some additional bills of smaller denominations and a check also delivered by the defendants to the plaintiff as a part of the total amount due upon the closing of the deal, after adjustments and prorating of taxes, interest, insurance and other items. The case is one in equity and the evidence is voluminous. On account of the nature of the case and the many conflicts in the testimony, we feel obliged to state the evidence in considerable detail.

On essential matters, plaintiff's testimony was, in substance, as follows: He is a lawyer and has practiced his profession in Kansas City, Missouri, since 1912. He knew the defendants only a few days prior to the making of the contract referred to; that the property sold was his own residence; that the contract was entered into and the $1000 cash payment made, leaving a balance of the purchase price of $22,665, subject to certain adjustments of taxes, insurance, etc. There were two agents, a Mr. Bradley and a Mr. Ballard, who

were to divide the commission to be paid by plaintiff. On March 14, 1944, defendants and Mr. Bradley came to plaintiff's office to close the deal. During the ensuing transaction of the business the plaintiff sat at his roller top desk, to the right of which sat Mr. Bradley, the agent, and nearby to the plaintiff's right sat defendant Clarence M. Buettner, and to the latter's left sat defendant Helen M. Buettner. There was a fly leaf on the right hand side of plaintiff's roller top desk, which he used during the meeting. To the rear of plaintiff's chair was a small flat top desk. This private office was one of three private offices making up a suite, together with a common reception room on which each private office fronted, and plaintiff's office was the first office on the south of the suite. Just outside the entrance to plaintiff's private office was the desk of his secretary, and at the north end of the reception room was a small store room. Two other tenants used the remaining two private offices in the suite. The parties first adjusted certain unearned insurance and tax items, and the purchase of a fire screen and andirons from plaintiff, and the defendants produced a small package containing $665 in currency, whereupon Mrs. Buettner wrote her check for $116.81 to cover the above adjustments, including the $50 for fire screen and andirons, a total amount of $781.81, which was thereupon counted out on the fly leaf of plaintiff's roller top desk. Thereupon Mr. Buettner took out of his pocket a package of bills with a rubber band around it, and said: "You wanted cash, so we made it cash, thousand dollar bills", and handed the package to the plaintiff. Plaintiff then counted the bills in this package, without removing the band. Mr. Buettner then pulled up his chair and counted them, thumbing through them as the plaintiff had done. At the request of the defendants the deed was thereupon made to them as husband and wife, and the consideration shown therein as "$1.00 and other valuable considerations ...... Dollars". Plaintiff then called his secretary, Miss Roselle, to complete the deed and the receipt, who brought the same back with the deed duly acknowledged, she being a notary public. In the meantime, the large package of bills was on plaintiff's desk in view of all the parties; but the other currency first described ($665) and said check were on the flat top desk. After extended explanations to Mrs. Buettner regarding the matter of sewer taxes and other items of adjustment, Mr. Buettner again counted the money and also the smaller pile of currency, and plaintiff then picked up the large package of bills and handed them to his secretary and said: "Q. Are they all there?", whereupon the secretary counted them on the flat top desk near Mr. and Mrs. Buettner, not separating them, but going through them as the other parties had, and said: "Yes, 22", and handed the package back to plaintiff.

Mr. Bradley was to receive $582.50, one-half of the commission. Mr. Ballard, the other agent, was to receive a like amount, but he was

not present. Plaintiff, handing his secretary Mrs. Buettner's check and the $665 in currency, told her to get the right amount of money to pay Mr. Bradley his $582.50. The secretary then took the check and the $665, but left the other package of 22 bills on the plaintiff's roller top desk, and went out to the reception room where she prepared a receipt for Mr. Bradley to sign, and brought back Mr. Bradley's commission and obtained his receipt for it; thereupon plaintiff handed to Mr. and Mrs. Buettner the deed and receipt for $22,665, balance of purchase price, plus the other small amounts of adjustments aforesaid. Plaintiff then gave the large batch of bills to his secretary and told her to put it away. Thereupon the parties arose and with a few general remarks, the defendants and Mr. Bradley left the office, plaintiff walking with them to the door, and part of the way down the corridor. At no time was the package of $665 mingled with the package supposed to contain the twenty-two $1000 bills.

Plaintiff testified that he did not anticipate or know that the defendants were going to bring currency until when Mr. Bradley announced shortly before defendants arrived that they had stopped at the bank to get the money. During all the time that plaintiff counted this money, plaintiff did not remove the rubber band from the large package of bills, and neither did the other parties take the band off or lay the bills aside one at a time. The band was still on it when Miss Roselle put the package away, and is still on it. Plaintiff thought and believed that there were 22 $1000 bills in the package at the time he turned over the deed and receipt. The commission paid to Mr. Bradley was paid mostly out of the $665 in currency delivered by the defendants, but the denominations thereof not being appropriate, the secretary added other money from the safety deposit box in the storage room to make Bradley's $582.50.

Upon returning to his office after the defendants walked to the elevator, plaintiff said to his secretary, Miss Roselle: "I believe we'll take this money, this package of money, down to the safety deposit box". Plaintiff had a safety deposit box in the vaults of the Commerce Trust Company in the same building. The secretary brought to him the package of bills. While she stood at the door of the office, plaintiff sat down at the desk and started thumbing through the bills and again counted 22. He reached for an envelope to put them in for deposit in the safety deposit box and counted them once more. On that second count, about the middle, about the 15th bill from the top, he discovered one bill of $100 denomination instead of $1000 denomination. He called to his secretary: "There is a mistake here in these bills, that's a hundred dollar bill". He said: "We must get hold of Mr. and Mrs. Buettner and Mr. Bradley and tell them about it as soon as we can and get it rectified." Plaintiff knew that defendants were on their way to their former residence in Platte County to bring some personal effects to the house just purchased from plaintiff, and

knew that they had not had time to get there, and told Miss Roselle to try to contact Mr. Bradley and through him get word to the defendants. He told her to stay in the office and try to reach Mr. Bradley. He himself was going from the bank to the house to look after some of his personal effects there. Plaintiff then made a note, put it in the envelope with the package of bills, and placed them in his safety deposit box in the Commerce Trust Company. It was not more than 5, 6, or 7 minutes after defendants left plaintiff's office that he discovered the mistake in the count of the $1000 bills. He stated that Miss Roselle, his secretary, had been in plaintiff's employ for 18 years; that she handles his personal financial transactions, deposits money, withdraws money, and buys bonds for him.

In the storage room in plaintiff's office suite he has a small, steel box in which he keeps his private papers to which he alone has the key. He has another box in which he keeps some of his papers and which is looked after by Miss Roselle, and to which she has a key. In addition to that, there is a small box in the storage room in which Miss Roselle keeps her own effects.

About 6:30 P. M. the same day defendants returned from Platte County and plaintiff met them at his former residence, which he had just sold that day to the defendants. He told them what had happened, and that he had been trying through Mr. Bradley to reach them, and had arranged for Mr. Bradley and the defendants to meet again in plaintiff's office the following day to correct the mistake; that it seemed that all parties had made the mistake. Mrs. Buettner, when told of the finding of a $100 bill in the large package, said: "Is that so—that's too bad". Mr. Buettner said nothing.

The following day defendants and Mr. Bradley came again to plaintiff's office. Plaintiff had gone to the safety deposit box of the Commerce Trust Company and brought the package of bills back to his office. Plaintiff thereupon explained the matter again and showed them the bills, and that the package was $900 short, and asked defendants to correct the mistake. Mr. Buettner then said: "Well, you were not born yesterday"; that he (Buettner) had the receipt and deed and did not see why he should "rectify it". Plaintiff explained that plaintiff's receipt and deed were out; that it was a mutual mistake of fact; that they had all made a mistake; that a court of equity should take charge of the case, but he did not believe that it would be necessary because he believed the defendants would correct the error. He told defendants: "You are not this kind of folks. You don't want to have this property, and me not have the full consideration". Mr. Buettner replied: "Nine hundred bucks is nine hundred bucks". Plaintiff explained that he was not insinuating dishonesty on anyone's part but simply that it was a mistake; that all had counted the money, and that the mistake was mutual. Mrs. Buetner then told about having received a check for the proceeds of the Platte County

property, a thirteen or fourteen thousand dollar check, which defendants had cashed at the Commerce Trust Company, and she said she would check up with the bank and see whether or not the bank could have made a mistake, and would let the plaintiff know the result.

Plaintiff, hearing nothing further from the defendants, called again at the house, but Mr. Buettner was not there. He asked Mrs. Buettner what they had decided to do about correcting the mistake and she said he would have to talk with Mr. Buettner. Plaintiff heard nothing further from the defendants until he called Mr. Buettner over the telephone on April 7th and asked him what he intended to do about the $900, and Mr. Buettner replied that he was not going to do anything about it; that he had the receipt and deed, the transaction was closed, and that he was not going to do anything more about it. Plaintiff told him: "You don't want to do anything like that. This is a mutual mistake. I don't think you are that kind of people". Plaintiff offered to leave the matter to arbitration, but Mr Buetner replied that he was going to do anything further about it, and didn't want to be bothered about it.

Plaintiff testified that the package of bills produced in court was the identical package of 22 bills referred to in his testimony; that the package was in exactly the same order and in the same condition as it was when produced from Mr. Buettner's pocket and handed to plaintiff on March the 14th. It had been kept intact in a safety deposit box and produced only when shown to defendants and to counsel for plaintiff. The package, as produced in court, had a rubber band around it, which, plaintiff stated, had not been removed except when shown to the defendants on March 15th, and later to plaintiff's counsel.

The bills produced in evidence were clean, nearly new, crisp, and were not wrinkled. They were all green on one side and a sort of grayish color on the other. The $100 bill was the same size, shape and color as the $1000 bills.

On cross-examination of plaintiff it was shown that the portrait on the face and other details in the body of the $1000 bills differed from the $100 bill. Plaintiff had counted the bills at least three times before delivering the deed and deceipt, and each time did so by taking the package in his left hand and counting them by going through the bills one by one at the end, counting them "1, 2, 3", and on right through the package to 22. He testified: "I never saw a hundred dollars, or noticed any difference between it and a $1000 bill. I found them 22 all the time, and I thought it was 22 $1000 bills, and I am not an expert counter, but that is the way I counted it". He stated that in counting the bills he relied both on what the defendant had said as to the contents of the package, and also on his own counting, and gave the receipt on the basis that all 22 of the bills were $1000 bills. Plaintiff did not believe Mr. Buettner had said how many thousand dollar bills were in the package, but plaintiff had counted 22, and so had Mr.

Buettner, after they were laid on the desk. He stated that all the parties were anxious to get through with the transaction because of defendants' desire to go to Platte County to get some things from their former residence, and the plaintiff was anxious to get out to the house he was then selling in order to answer inquiries of advertisements for sale of personal property.

Plaintiff testified that he had some currency on that day in a steel box in the office store room to which he had a key. When he told Miss Roselle to get the package so that he might leave it in his safety deposit box at the Commerce Trust Company she obtained the package of 22 bills from the little storage room back of her desk in the office suite, where she had just-recently placed it. He then counted them with more deliberateness, but again counting the number only,—that is, "1, 2, 3, 4, etc.", and found 22 bills in the pack. Before putting them in an envelope for the purpose of taking them to the safety deposit box in the bank, he counted them again deliberately, and found the $100 bill. He sealed them in the envelope and put them in the safety deposit box at the bank. He had a little currency in the box in the bank other than the pack of bills in qusetion, but the other currency was in separate envelopes and marked to show their identity and contents. When plaintiff turned over the receipt and deed to defendants he thought that he had 22 $1000 bills in the large package. After Mr. Buettner turned the package over to plaintiff, Miss Roselle had handled the package of 22 bills about five minutes, during which time she counted them on the flat top desk, and then handed the package back to the plaintiff.

While Miss Roselle was preparing the deed, Mrs. Buettner counted the package and said it made up the $22,665. The $1000 paid at the execution of the contract, plus the $665 and the $116.81 check, plus the package of bills in evidence was all the plaintiff received from the Buettners in consideration of the agreed amount of $23,665. This included $50 for the fire screen and left $900 short.

On further cross-examination plaintiff explained that the only reason that he knew as to why he did not discover the discrepancy while the defendants were in his office, after counting the bills several times, and was able to discover it later after they left, was that when he prepares anything for deposit in his safety deposit box at the bank he is cautious to put the same in an envelope and mark on it the amount enclosed and its purpose; that he keeps a record of what he places in the box. Therefore, he took more time than usual in counting the package before putting it in the envelope. On re-direct examination plaintiff said that when Mr. Buettner made the remark that "You wanted cash, here it is, thousand dollar bills", plaintiff had in mind that there were 22 bills, and he counted them hurriedly and assumed that they were all thousand dollar bills. He counted them as to number, rather than as to denominations.

In behalf of plaintiff, Miss Roselle testified that she was secretary and stenographer for the plaintiff. She told of her long period of service, and the responsible and confidential character of her duties. In substance, she said that she had a personal box of her own in the office store room where she kept her own personal funds in a cash envelope. There was also a box in that room belonging to plaintiff where, at times, there is some money when it comes into the office. She has a key and has access to that box. She has charge of it for the plaintiff and at times would deposit funds from it in the bank, and at times withdraw from the bank and put funds into it for office use. On March 14, 1944, when the plaintiff and defendants met to close the real estate transaction involved, she was in and out of plaintiff's private office answering the telephone and looking after her other duties at her desk. Later she saw Mr. Buettner take from his pocket the large package of bills supposed to contain $22,000. She was standing in the door of the private office at the time. Mr. Buettner said: ''You said cash, so I made it cash, in thousand dollar bills'', and laid the package on plaintiff's desk. She did not know that the Buettners were going to bring currency to close the deal. She saw the plaintiff then count the bills by running through them at their ends, and then lay the package on the fly leaf of his roller top desk. Plaintiff counted them two or three times. Plaintiff never did open up the package and spread out the bills or turn them over. The $665 in currency had already been laid on the flat top desk, together with Mrs. Buettner's check for $116.81. She saw Mr. Buettner later pull his chair up toward Mr. Bradley and count the bills in the large package in the same manner as the plaintiff had counted them. The deed had already been prepared. The receipt had not been completed because the amount of unearned insurance had not yet been determined. She then prepared, at plaintiff's request, the acknowledgment on the deed and made out a receipt for $22,665, balance purchase price due, plus the other small items. When she brought the deed back with the acknowledgment, together with the receipt, she handed them to the plaintiff, and he handed her the large package of bills. She took them to the flat top desk at the side of Mrs. Buettner and counted them. When she had finished counting, she turned to Mrs. Byers and said ''22''. The pile of $665 in currency was still separate. She then handed the large package of bills to the plaintiff and he laid them on the fly leaf of his desk and turned and picked up the $665 in currency on the flat top desk and told witness to pay Mr. Bradley his part of the commission. She took the $665 and the check to the front office, took therefrom a $500 bill, three $20 bills and a $5. bill, to which she added $17.50 of her own money in order to total $582.50, Mr. Bradley's half of the commission, and handed this sum to Mr. Bradley and took his receipt. The package of 22 bills was still on the plaintiff's desk. After Mr. Bradley was paid, plaintiff

handed the package of 22 bills to witness and said "Put them away", and as she left the private office with them, she saw plaintiff hand the deed and receipt to the defendants. She took the package directly to the storage room in the front office and locked it in the private box. The package did not leave her hands until it was locked in the box in the storage room. She did not touch it until Mr. Byers returned to the office after the Buettners walked down the corridor, and said: "I believe I'll take that money down to the safety deposit box before I go to the house". Witness again went into the storage room, unlocked the box, got out the package and handed it back to the plaintiff, who took it to his private office. Plaintiff then laid the bills on his roller top desk and picked up an envelope to put them in and started counting through them while witness was standing in the doorway. After counting them once, he started through them again and when he had reached somewhere near the center of the package he stopped and said: "There's a hundred dollar bill. There has been a mistake". This was witness's first knowledge that a hundred dollar bill was in the package. Witness walked up close to the desk and saw the defendant go through the package again carefully to be sure there was only one such bill in it. He then sealed it up and told witness to stay in the office until she could contact Mr. Bradley and notify the Buettners. She finally learned from Mr. Bradley that the Buettners had gone to Platte County to get certain articles to bring back to the house; that from the time witness received the package from plaintiff until he told her to bring it back so that he might take it to the bank for deposit in the lock box, the time did not exceed ten minutes. Nobody but she and plaintiff had access to the key to the box where she had put the package. In the same box and in little envelopes there were possibly $37 and some odd cents in petty cash that belonged to plaintiff for daily use, and about $250 in another envelope ready for deposit in the bank, and, also, there was still the thousand dollar bill which the Buettners had paid as down payment on the real estate transaction. The envelope containing $250 was money plaintiff had drawn from a safety deposit box for some prior matter or for his personal use.

Witness testified that early the next morning Mr. Ballard, the other agent, called for his part of the commission, $582.50. She gave Mr. Ballard the $250 that was in the envelope that belonged to plaintiff, and the $100 left out of the Buettners' $665, plus the $37 in the petty cash envelope, and witness made up the difference out of her own cash envelope of about $194.

Miss Roselle further stated that later that same day the Buettners came back. Witness then saw the plaintiff open the envelope that he had sealed with the 22 bills in it, and show it to the defendants, and he called their attention to the $100 bill in the package just as he had sealed it. She heard him tell them that it was a mutual mistake

and, during the conversation she heard Mrs. Buettner say to Mr. Buettner: "Do you suppose I could have gotten a hundred dollar bill instead of a thousand dollar bill?" She did not hear Mr. Buettner make any reply.

On cross-examination Miss Roselle testified that when she counted the package of 22 bills she counted only the number of bills and not the amounts; that it did not enter her mind that they were not all $1000 bills. She knew what the balance of the consideration for the transaction was.

Being recalled for further cross-examination, Miss Roselle testified as to the physical arrangement of the office suite where the real estate transaction was closed. She said the other two private offices were occupied by two other tenants; that during the busy portion of the day people come and go on business with the other tenants or the plaintiff; that the other tenants had a right to use the storage room; that there was a door to that room that could be locked, but she had never seen a lock on it. She reiterated that no one but witness and Mr. Byers has a key to the box in which the package of 22 bills had been placed by her; that the box had been used for such purposes for many years.

In behalf of defendants, Harold Bradley, one of the agents in the transaction, testified that on March 14, 1944, he rode down town with Buettners, who told him that they were going first to their safety deposit box at the bank and would meet witness at Mr. Byers' office. They later arrived and announced that they were ready to close the deal. Mr. Buettner folded the bills lengthwise, or held them doubled lengthwise in one hand. Witness asked plaintiff if he had the deed. Mr. Buettner kept counting the money, and counted it at least twice. Buettner asked witness if the deed was all right, and witness told him it was. Then Mr. Buettner handed plaintiff the sheaf of bills. Witness believes Mr. Buettner said: "Well, here is the money". Plaintiff took the bills, laid them down flat on the desk, ironed them out with his hand, one at a time, turning each one over and with the one thousand dollar denomination in one corner. The bills were not all one size. Witness thought plaintiff was trying to get all the bill of the same size faced up. Witness did not count the bills as they were laid over, but he could see $1000 in the corner of them. Plaintiff then turned them over and counted them again, altogether counting them at least three times, but the last time did not lay them over one by one as he had before. In counting them he had used both hands, laying each one down and flattening it out or straightening it. There was very little conversation going on while the plaintiff was doing the counting. Plaintiff handed the deed to the witness and witness said he guessed it was all right to give it to Mr. Buettner. After handing it to Mr. Buettner, plaintiff then said he forgot about the insurance and also the fire screen and andirons, which Buettners had concluded

to buy. Mrs. Buettner then said she would give her own check for those items, so the deed was handed back to plaintiff and Mr. Buettner said to plaintiff: "Will you give me back the money, we will start over again". Plaintiff handed the money back to Mr. Buettner, whereupon Mrs. Buettner wrote her check for the additional amount required, $116.81, and handed it to Mr. Byers. Buettner then gave plaintiff the money again, and the deed was again handed to Mr. Buettner. All the bills that made up the total of $22,665 were in one package. Those of small denominations were intermingled with the thousand dollar bills until Mr. Byers had laid the thousand dollar bills down and had laid the others to one side. Plaintiff signed and delivered to Mr. Buettner a receipt for the $22,665, plus the small items mentioned.

Witness stated that Miss Roselle was not in the room all the time but came when the plaintiff called her; that when they were all through he told her to put the money in the safe and she picked it up and said: "Maybe I had better count this before I go out of here", and they all laughed. She then counted it on the flat top desk. Witness believed that plaintiff then had the bills in two bunches and told the secretary to leave one and "to leave out some to pay me $500". She took part of the bills out, including the 22 $1000 bills. Witness did not know what the secretary did with the bills when she left the private office. There was no rubber band around the bills according to witness's best recollection, at least when Mr. Buettner handed them to plaintiff. Witness's part of the commission was $582.50, a similar amount being due to another agent. This amount he was then paid in currency and believed that it had been paid out of the bills that Mr. Buettner had just given to the plaintiff. Thereafter there was some discussion as to when the defendants would move in and subjects of draperies, rugs and other personal effects were discussed, and the defendants and witness left. On the way out Mr. Buettner asked witness what should be done with the deed, and witness said that he would take it to the court house and put it on record.

On cross-examination Mr. Bradley said that when he got back to his office after the deal was closed, there had been a call from Mr. Byers's office and that he called Mr. Byers, who told him of the shortage of $900, and how he had discovered it. On the following day witness and the Buettners called at plaintiff's office and he exhibited to them a package of bills and showed them a $100 bill in the middle of the pile of $1000 bills, and said that he (plaintiff) though perhaps Mrs. Buettner, in getting the money, had made a mistake when taking it out of her safety deposit box. Mrs. Buettner said that on the day following the signing of the contract she had gone down to her safety deposit box and carefully counted out the money to have it ready for the closing as they were very anxious to get into the house and had put the money in an envelope after counting it several times, and that

Mr. Buettner had also counted it and handed it to her, and she had counted it again. Plaintiff kept saying: "Why don't you go down and check your safety box?", and said that he felt the whole thing was just a mistake and that she would probably find where she had made the mistake. Witness said he didn't see Mr. Buettner crease the bills as he held them in his hand and before delivering them to plaintiff, but sort of pressed them together in his hands, running his fingers along them. Witness afterwards called on plaintiff several times to see if the matter could not be settled. Witness could not see any creases in any of the bills offered in evidence. Witness himself never did actually count the money and could not say that there were 22 $1000 bills or 21 $1000 bills delivered that day, but he saw a certain amount of $1000 bills handed over to plaintiff. He could not say that the full consideration was paid.

Defendant Helen M. Buettner testified that after the signing of the contract on March 10, 1944, she opened her lock box in one of the booths of the Commerce Trust Company vault. In the box she had some thousand dollar bills in an envelope. She counted out 22 of them and put them in another envelope and laid it to one side. She then got another envelope and counted out $665. She and her husband had recently sold their place in Platte County for cash and out of the proceeds had put $14,000 in currency in the box. There was some other currency already in the box. After she took out the 22 $1000 bills from the envelope, there were some left therein, and there was also some currency in the other envelope, after removing the $665. The $665 was made up of one $500 bill, one $100 bill, three $20 bills and one $5. bill. All of these bills so removed from both envelopes were placed in another envelope and put back in the box without intermingling them except that all such currency so taken out was placed in one envelope. This envelope was sealed and put on top of other contents of the box. The next time she saw this envelope was on the day that the deal was closed when she went down in connection with some other matters and saw this envelope on top. It had not been disturbed. On the afternoon of that date she and her husband again opened the box and she unsealed the envelope last described and told her husband to count the contents which he did. He then handed the money back to the witness and the envelope was thrown away. Witness then counted the money herself and placed it in a new envelope and handed it to her husband. She did not put a rubber band around any of them. They then took the envelope to the plaintiff's office, where they all took their seats as described by other witnesses.

She testified that Mr. Buettner held the bills in his hand while the papers were being looked over. She did not hear her husband count as he held them, but he sort of played with the bills. After the deed was approved, he gave the money to plaintiff and witness asked for

the deed. The bills were laid on the fly leaf of plaintiff's desk, all in one package. The smaller denominations, however, were not mingled with the large ones. Mr. Buettner then said: "Here's the money". The plaintiff then started counting the bills carefully, facing them with the denomination side up. While counting, the plaintiff faced each bill with one hand, and carefully laid them down in separate piles. She and Mr. Buettner watched the counting. Miss Roselle was not then in the office. There was no rubber band around these bills when Mr. Buettner handed them to plaintiff, although the plaintiff might have put one on later. Plaintiff counted the bills at least three times and in the same manner except that the last time they were already faced and it was not necessary to face them again.

After the delivery of the deed, conversation ensued in regard to taxes, insurance and andirons, and witness wrote her check as has been testified. Plaintiff then called in Miss Roselle and told her to bring the receipt. He handed her the bills and she counted them on the flat top desk and flattened them out. Miss Roselle then stated that they were all there, and handed them back to Mr. Byers. Mr. Byers then handed them back to Miss Roselle and told her to place them in the safety deposit box, whereupon Miss Roselle took them from the office. Miss Roselle had to get some money to make the right change to pay Mr. Bradley his commission, which was then paid to him. The deed was then delivered and after a few minutes' discussion, witness and her husband and Mr. Bradley left.

Mrs. Buettner testified further that that same evening the plaintiff came to the house which they had just purchased from him, and said that defendants were $900 short. Witness was too "dumbfounded" to say anything in return, and does not remember that her husband made any statements. Plaintiff asked them to come to his office the next day, which they did. She did not say to her husband: "Do you suppose I could have made a mistake by putting a hundred dollar bill instead of a thousand dollar bill?"

She stated that before she and her husband left her safety deposit box on the day before, she had counted what remained in the box or in the envelope therein, and that "jibed" with what she was supposed to have taken out. She knew how much she had had in the box and how much they had paid plaintiff. She counted the bills in the envelope from which she had taken the 22 $1000 bills and the amount remaining was correct.

On cross-examination Mrs. Buettner further testified that she had had two envelopes in her lock box containing $1000 bills and one containing smaller denominations, with the amount contained in each written on the envelopes; that some times when she put in or took out money she would lay the money on the table, depending on whether she was in a hurry. She testified that she generally asked for new bills when cashing checks, as she liked clean money. She did not re-

call whether all the bills had been obtained from the same bank as they represented different transactions. She made no record of the serial numbers of the bills. She obtained the $1000 bills from the Commerce Trust Company. After she had promised plaintiff to check up the contents of her box, she did so and found that she had eight $1000 bills left; that before the transaction was closed she had counted them, and there were thirty $1000 bills in that particular envelope; that she did not know whether they had all been obtained through the Commerce Trust Company or not as some of the money was her husband's money that he gave her to put in the envelope from other transactions. The $1000 bills in that envelope had been there for some time; some of them were hers and some belonged to her husband That when she counted them out for the Byers' transaction, she took the entire $30,000 out of the envelope and counted out 22 of them and then counted to see if she had eight left; that she had put the 22 in an envelope and then got $665 from two other envelopes. All this money she laid out before her and arranged in the way she wanted it. "Q. You laid it all out before you? A. I checked the envelope, I had my 22, and I counted them in my envelope, to see if I had eight left; I held them very carefully, and I got in another part where I had the $500—the $500 bill, and I took it, the $500 bill, and put it with them, and I put that over here, and I had another envelope—no, I will change that, for the reason—this is probably irrelevant, but I will tell you my remembrance; I took my $500, the $100, and the three $20 bills and put them here, and put these two back in my box, and I counted these over again. Q. You had what you thought was 22 one-thousand-dollar bills A. I know I had there 22 one-thousand-dollar bills. Q. You had those in one pile? A. Yes, sir. Q. And you added to the pile $665, in smaller denominations A. Yes, sir''.

She testified that she had all these bills properly faced and placed them all in another envelope and sealed it. No one had a key to this box but herself; that she opened it several times a week or month as occasion required; that she had put in the $1000 envelope the proceeds of the sale of their property in Platte County, but it was not all in thousands, some of it she put in the $500 envelope; that they had sold their place for $14,000, but she could not recall how many thousand dollar bills from that deal she had put in the envelope because she no longer has the envelope; that she and her husband had carefully counted out the $22,665 for the Byers deal because she knew she couldn't get the house unless it was correct. She and her husband counted it several times before she sealed the envelope. She did not know whether her husband disturbed the order of the bills while handling them before delivering them to the plaintiff. She did not know whether the bills in evidence were the identical bills handed to the plaintiff on March 14th; that as far as she knew the bills delivered had not been folded or creased, but she had asked the bank

for new money when getting it in large denominations. There was no rubber band on the package when handed to plaintiff; that she did not believe the bills they had were folded over lengthwise or creased. She thought Miss Roselle said to Mr. Byers after she had counted the bills, "It's all here". She denied having asked her husband at the meeting on March 15th if he thought it was possible she could have gotten a hundred dollar bill for a thousand dollar bill by mistake.

Defendant Clarence-M. Buettner testified that when he and his wife went into the booth before going to plaintiff's office on March 14th, his wife opened an envelope and both counted the contents $22,665, and he put the money back in the envelope and in his pocket. There was no rubber band around the bills. He had counted the bills by snapping each one and laying it off to one side. There were 22 $1000 bills, a $500, a $100, three $20 bills, and a $5 bill. When Mr. Bradley said the deed was correct, witness said: "All right, we are ready to settle and I have the $22,665", and pulled the envelope from his pocket. The entire amount was in one package with no rubber band around it. Witness took the three $20 bills, the $100 bill, the $500 bill, and the $5 bill, and put them on the bottom and placed these on the fly leaf of plaintiff's desk; that he counted the money as he laid it on the fly leaf of the desk and it totaled $22,665, and said to plaintiff: "You count". The plaintiff then took each bill off the pile and put it in a fresh pile, one on top of the other, using both hands. This he did at least three times. Later, after the adjustments were computed, plaintiff called Miss Roselle and she took the money to the flat top desk and counted it, and left the room, taking the bills with her. Plaintiff then told her to pay Mr. Bradley his commission and she brought some money in and paid it to Mr. Bradley. While holding the bills before delivering them witness folded them lengthwise, but without creasing them. When Mr. Byers came to the house that evening and said that defendants were $900 short, he said to Mr. Byers: "Naturally I figure the deal was fairly closed and settled in your office, and that money, I could not say whose money it was after that; I know I handed it to you, and you gave me a receipt, and I thought the deal was closed". He did not hear his wife say the next day, in plaintiff's office; "Is it possible I might have made a mistake?" He knew he had to have the correct amount of money or he could not get the deed. He was anxious to get possession at once.

On cross-examination Mr. Buettner testified that $3000 of the money paid to Mr. Byers was his own, which he had given to his wife to put in the safety deposit box; that his funds were put in with the other funds on March 9th, the same day the $1000 down payment was made. On that same day he had given her a check for $4000, which she cashed and she gave him $1000 of it back, but he did not know of his own knowledge that she placed the remaining $3000 in the box. He

admitted telling both plaintiff and plaintiff's counsel that he intended to do nothing about paying the additional $900.

Helen M. Buettner, being recalled, further testified that she had forgotten to state in her prior examination that she had gotten a $4000 check from her husband on March 9th and had cashed it, receiving $1000 bills for it, but that was on another deal. Three of these bills she put in her box. She may have given her husband a check for the other $1000, but this she could not remember. Later she testified that she put all four $1000 bills in the box but in another envelope, where she had other $1000 bills for another purpose; that all the $1000 bills she had in the box were those in the envelope containing the 22 $1000 bills referred to and another envelope containing $4000.

On re-cross-examination she testified:

"Q. You are sure you put four $1000 bills in the envelope, and in your box? A. I gave Mr. Buettner one. I didn't say I put four in there, I said three, and I don't remember whether—I can check it, I don't remember as to whether I cashed it in the deal or not; I don't recall. Q. You got a check for $4,000, check of your own, on that day? A. Yes. Q. And put it in $1000 bills—how many of those bills did you give Mr. Buettner? A. One. Q. Is that the $1000 that was given to Mr. Byers? A. I gave him one out of the four, I gave him one out of the bank, one of my own. Q. Are you talking about your husband? A. No, this is the way it was, out of the $4000 check Mr. Buettner got $1000 and that had nothing to do with this; then this check I exhibited I gave him to give to Mr. Byers, and the $1000 bill. Q. That was all on the 9th? A. I don't remember. Was this check dated the 9th? Q. That was the same day you cashed the check from the sale of the house across the river? A. Yes. Q. And you did get that currency and put it in this box? A. Yes, I guess so—I don't remember the date".

The assignments of error, nine in number, may be consolidated and fairly stated, in substance, as follows: (1) The judgment was not supported by clear, cogent and convincing evidence as required by law for the reformation of a deed or other written instrument, or to establish mutual mistake; (2) the finding that appellants represented the amount of money they delivered to plaintiff in payment of the purchase price was inconsistent with the finding of mutual mistake, and is unsupported by the evidence; (3) the judgment in favor of plaintiff was against the weight of the evidence and was not supported by any substantial evidence.

The general principles relied upon by the appellants are well established. "In equity proceedings to reform a written contract on the ground of mistake, the burden of proof rests upon the party who asserts it, and he must establish its existence by clear and convincing evidence, and if he fails to do so, the relief prayed will be denied".

[Moran Bolt & Nut Mfg. Co. v. St. Louis Car Co., 210 Mo. 715, 729, 109 S. W. 47.] "Courts cannot deal lightly with the solemnly expressed terms of a written instrument". [Driskill v. Ashley, 259 Mo. 1, 15, 167 S. W. 1026.] The mistake must be mutual. [Wall v. Mays, 210 S. W. 871.] The intent of the parties to a written instrument is presumed to be expressed as written. [Parker v. Vanhoozer, 142 Mo. 621, 44 S. W. 728.] Appellants cite some authorities that hold the quality of evidence required in cases for reformation of written instruments to be more than a mere preponderance of evidence, amounting to a certainty of error. [Sweet v. Owens, 109 Mo. 1, 18 S. W. 928; Driskill v. Ashley, *supra.*] But the Supreme Court in Fanning v. Doan, 139 Mo. 392, 41 S. W. 742, cited by appellants, holds that similar statements of judges ". . . form no rule of law to direct courts in dispensing justice. No written instrument will be reformed unless the evidence produced to show the mistake is clear and satisfactory. When the mind of the judge is entirely convinced upon any disputed question, whether fact or law, he is bound to act upon the conviction". [See, also, 44 Am. Jur., pp. 652-653, Sec. 117. Leitensdorfer v. Delphy, 15 Mo. 160.]

The cases cited by appellants on the character of evidence in cases for reformation of deeds and other written instruments all involve the question of whether the instruments at the time executed expressed the intent of the parties. The reformation of deeds, contracts or other instruments in those cases was the primary relief sought, on the basis that the minds of the parties had in fact never met. Under the evidence in the case at bar, there is no contention that the deed as drawn, and the receipt as written, did not at the time express the mutual intent of the parties in all respects, and that the parties at the time all believed the contents of the instruments were true and correct. The claimed right of the plaintiff here to the reformation of the deed and receipt, if the allegations of plaintiff's first count are established, is in the nature of preliminary and auxiliary relief to plaintiff by making the instruments conform to the true facts, overlooked by mutual mistake of all parties, but later discovered, pertaining to the count of the consideration and sums appearing in the instruments believed to have been delivered. The further relief on the instruments *as reformed* is sought in plaintiff's second count for judgment and vendor's lien. The two actions are consistent. [See 53 C. J., p. 908, Sec. (4)C, 20 C. J., p. 16, Sec. (11)D.]

But whether, regardless of the distinction between this case and those cited by appellants, the rule of proof applicable to the case are less stringent, we believe the evidence and proof of plaintiff met the requirements of those rules as construed by the authorities. At the conclusion of the testimony and before the court made its formal findings and decree, the court said: "It is my conclusion that there

was a mistake somewhere in the counting of the money, and the judgment will be for plaintiff and against defendants". It was the court's duty to act upon its conviction. [Fanning v. Doan, *supra.*]

It is true that upon appeal in equity cases, the appellate court may review the whole record and weigh and decide the same *de novo*. "Nevertheless, where an issue of fact rests on the credibility of witnesses, this court will usually defer to the finding of the chancellor, who has many opportunities, necessarily denied to us, of seeing and hearing the witnesses themselves, observing their demeanor while testifying, and of determining the weight which properly attaches to their testimony". [Keener v. Williams, 307 Mo. 682, 271 S. W. 489, 496. See, also, Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118; McFarland v. Bishop, 282 Mo. 534, 222 S. W. 143.]

According to the evidence of the defendant all the money constituting the full balance of the agreed purchase price was correctly counted out and delivered intact to the plaintiff. According to plaintiff's evidence the money delivered to him was $900 short of the agreed balance. The trial court heard all this evidence and found this issue against the appellants. We cannot say that there was not substantial evidence to support the court's finding and decree, or that the court abused its discretion therein in any respect. This disputed issue being material, and the evidence of the parties thereto pertaining being in direct conflict, we defer to the finding of the trial court as to such facts.

Appellants' further point is that the court's finding that appellants represented to plaintiff that the money delivered to plaintiff on March 14, 1944, was $22,665 was inconsistent with its further finding of mutual mistake, and that in the absence of mutual mistake, the remedy of reformation would not be available to plaintiff, but rather an action for rescission of contract. It is clear from the evidence that by the term "represented" in plaintiff's petition and in the court's finding it was not intended to charge a false representation, but a mere statement of what appellants, in good faith, believed and stated to be a fact. The petition and finding of the court plainly characterized appellants' conduct in the counting and delivery of the money, and the respondent's conduct in counting and receiving the same, to be a mutual mistake, and nowhere is fraudulent representation made the theory of plaintiff's case. The court's finding and judgment is premised only on the theory of mutual mistake. We find no merit in this contention. There was no error in the judgment of the court on either count of plaintiff's petition.

In view of the finding and judgment of the court on both counts of plaintiff's petition, it follows that judgment was properly against appellants on their counterclaim. The facts necessary to support the

counterclaim were found against appellants by the findings, decree and judgment in the two counts of plaintiff's petition.

The judgment and decree of the trial court on both counts of respondent's petition and on appellants' counterclaim are affirmed. All concur.