**COMMERCIAL STANDARD INSURANCE COMPANY, a corporation, Appellant,**

v.

**MARYLAND CASUALTY COMPANY, a corporation, Appellee.**

No. 15757.

United States Court of Appeals
Eighth Circuit.

Oct. 10, 1957.

Flavius B. Freeman, Springfield, Mo. (Neale, Newman, Bradshaw, Freeman & Neale and Donald J. Hoy, Springfield, Mo., on the brief), for appellant.

Mayte, Boylan, Hardie, Springfield, Mo. (Miller, Fairman & Sanford and J. Weston Miller, Springfield, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Appellant, Commercial Standard Insurance Company, plaintiff below, has appealed from the judgment and order of the trial court denying its claim for contribution from appellee, Maryland Casualty Company, on a certain liability settlement, and from the trial court's granting appellee's counterclaim for reformation of its fleet policy of insurance with the R. Chiles Tractor and Machinery Company, the involved insured.

For several years prior to February 12, 1955, appellee had insured all of the vehicles owned by the R. H. Chiles Company of Springfield, Missouri. On that date an endorsement was appended to appellee's fleet policy then in force with the Chiles Company which specifically excluded a certain 1951 Chrysler maintained by the Chiles Company for the use of its retired president, R. H. Chiles, Sr. On the same date, February 12, 1955, appellant issued its liability policy specifically providing coverage on the same 1951 Chrysler.

It appears from stipulated facts that the A. T. Quisenberry insurance agency of Springfield, Missouri, was the local agent for both appellant and appellee insurance companies. On February 22, 1955, just ten days after the 1951 Chrysler had been excluded from appellee's fleet policy and appellant had issued its separate policy covering the 1951 Chrysler, the R. H. Chiles Company purchased a 1955 Chrysler for the use of Mr. Chiles, Sr., which replaced the 1951 Chrysler. The trade-in value of the old car was applied to the purchase price of the new vehicle. The Quisenberry agency was notified of this change of ownership. Thereafter, one of the clerks in the agency's office endorsed appellant's policy to cover the new vehicle and to exclude the 1951 Chrysler. However, the appellee's fleet policy, which provided automatic coverage for all owned vehicles not specifically excluded, was not changed. It remained the same with the endorsement excluding the 1951 Chrysler which had been disposed of.

On May 21, 1955, R. H. Chiles, Sr., while driving the 1955 Chrysler, was killed in a collision with another automobile driven by one Carder. Carder thereby suffered property damage to his vehicle and personal injuries to himself. Appellant, under its policy covering the 1955 vehicle, commenced investigation of the accident. Appellant then requested that appellee join in the investigation and settlement of the Carder claims on the ground that the 1955 Chrysler was automatically included in appellee's fleet policy with the Chiles Company. Appellee refused to take part in that investigation and settlement, asserting that it was not liable for any part of the loss. Appellant made settlement with the Carders and also incurred an expense loss in investigation, attorney fees and costs. After demand for contribution was made and appellee's refusal given, appellant brought this suit against appellee. Diversity of citizenship and involvement of the requisite amount made for federal jurisdiction.

With its answer denying liability, appellee filed a counterclaim for reformation of its contract of insurance with the Chiles Company, asserting that the contract as written at the time of the accident, which indirectly included coverage of the 1955 Chrysler, was the result of a mutual mistake of the parties and did not reflect their true intent. Appellee supported its claim by alleging that the sole purpose of the parties in writing appellant's policy covering first the 1951 and then the 1955 Chryslers was to provide liability coverage on the vehicle used for pleasure only by R. H. Chiles, Sr., at a lower cost than could be had under appellee's fleet policy, which required a higher rating. Appellee further alleged that no premium was collected by it for coverage on the 1955 vehicle, nor was any claimed. Appellee concluded by claiming that if its policy should be construed to include the 1955 Chrysler, the failure of the Quisenberry agency to exclude it was the result of a mutual mistake of the parties and that

the contract should be reformed to exclude that vehicle.

At the nonjury trial appellee admitted that its policy, if taken literally, would cover the 1955 Chrysler. Thus the issues were narrowed to the sole question of whether appellee was entitled to a reformation of its policy to exclude the 1955 Chrysler. Appellee offered evidence, over the objection of appellant, which tended to show that neither the Chiles Company nor the officials of the Quisenberry agency had intended that there should be dual coverage on the involved vehicle under the policies of appellant and appellee, and that the apparent failure of the agency to specifically exclude the 1955 Chrysler from appellee's fleet policy was due to an error in the agency office, which represented both insurance companies as well as the assured.

After full consideration of all the evidence, the trial court in an opinion and order, 147 F.Supp. 539, 543, stated its findings as follows:

"I find that the failure specifically to exclude the car from the coverage of defendant's policy was due to the mutual mistake of the parties to the contract, acting by and through their agent, the Quisenberry Agency. There can be no question but that none of the parties intended to have double coverage for the 1955 Chrysler.

"The evidence, viewed as a whole, indicates that the parties intended to exclude the 1951 Chrysler from coverage under defendant's policy, not because it was a 1951 Chrysler, but because it was the personal car of Mr. Chiles and was operated for pleasure and not in the interest of the business of the Chiles Company. The intention of the parties clearly was to obtain separate insurance coverage for this personal car, whatever its make or model, simply to obtain reduced premium rates. The separate policies of plaintiff and defendant achieved this legal effect

temporarily, until the 1951 car was replaced by a 1955 vehicle. The intent of the parties became frustrated when the Quisenberry Agency, through its mistake failed to make the proper endorsement upon defendant's policy. On this issue, the evidence is 'clear, convincing and satisfactory.' "

Appellant makes two claims of reversible error in the trial court's decision. First, that the trial court erred in finding as a fact that the parties intended and agreed to exclude the 1955 Chrysler from coverage under appellee's fleet policy. Second, that the trial court erred in admitting evidence of previous contracts and transactions of the parties. Since the trial court's findings were based in part upon the evidence objected to by appellant, we treat the question of admissibility first.

Appellant's first proposition as to admissibility is to the effect that where a policy of insurance states that the written terms thereof, together with its endorsements, expresses the entire contract, such contract cannot be modified except by further endorsements executed according to the terms of that policy. Appellant's second proposition is that evidence of previous policies or contracts is not competent to prove the terms of the contract or policy in suit.

■ This court is not here required to pass upon the legal grounds for modification of a policy of insurance. The appellee has not attempted to prove that its policy was modified. Rather, it has sought and obtained the equitable relief of reformation, on the ground that the failure of the Quisenberry agency to endorse appellee's policy with the Chiles Company so as to exclude the 1955 Chrysler was due to the mutual mistake of the parties. Restrictions on the parties' legal power to modify their contract do not prevent a federal court, in the exercise of its equity power, from granting the remedy of reformation in proper cases.

■■ Proper cases for reformation include those where the party seeking equitable relief has shown that the contract as written did not reflect the true intent of the parties. Blevins v. Thompson, Mo., 1953, 255 S.W.2d 787, 790, and cases cited therein. This vital defect of a written contract may be shown to be the result of fraud, mutual mistake, or such other grounds as will satisfy the requirements for equitable relief. Baker v. Swearengin, 1943, 351 Mo. 1027, 174 S.W.2d 823, 829. See Employers' Indemnity Corp. v. Garrett, 1931, 327 Mo. 874, 38 S.W.2d 1049, 1054.

■ It is well settled Missouri law that parol evidence is admissible to establish a claim for reformation of a written contract. The case of Employers' Indemnity Corp. v. Garrett, Mo., 1931, 38 S.W.2d 1049, 1053–1054, supra, fully sets out the Missouri rule:

"(b) Where parties have deliberately put their engagement into writing, in such terms as import a legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole of the engagement of the parties and the extent and manner of their undertaking have been reduced to writing, and parol evidence is not permitted to vary or contradict the terms of such writing, or to substitute a new or a different contract for it. 10 R.C.L. 1018, § 209.

"(c) It is equally well settled that mistake, fraud, surprise, and accident furnish exceptions to the otherwise universal doctrine above stated. Parol evidence may, therefore, in proper mode and in proper limits, be admitted to vary written instruments, upon the grounds of mistake, fraud, surprise and accident. 2 Pomeroy's Eq.Jur. (4th Ed.) § 858."

■ As to its second proposition that evidence of previous policies or contracts is not competent to prove the terms of the contract in question, appellant has relied upon a case from this court, University City, Mo. v. Home Fire & Marine Ins. Co., 8 Cir., 1940, 114 F.2d 288. There, however, parol evidence of prior

insurance contracts was held inadmissible because there was no connection shown between the prior insurance policies and the policy in suit. Neither was there any showing of reliance upon the expired policies in the making of the policy in suit. In the case at bar all of the prior policies offered in evidence were written by the same agent, Quisenberry; with the same company, appellee; and covering the same insured, the Chiles Company. Appellee's Exhibits Nos. 1 through 11 and the policy in suit were either policies constituting a continuous program of insurance covering several years, or were letters pertaining to those policies. There is also substantial testimony in the record to show that the parties relied upon the prior policies in forming appellee's policy, which is involved here. Appellee's Exhibits Nos. 1 through 11 were clearly within the exception from the holding of inadmissibility in the University City case, supra, 114 F.2d at 294. This is especially true when the exhibits were offered to show equitable grounds for reformation. Employers' Indemnity Corp. v. Garrett, 1931, 327 Mo. 874, 38 S.W.2d 1049, 1054.

We now turn to appellant's first claim of error that the trial court erred in finding that appellee's endorsement No. 4 on its fleet policy with the Chiles Company was intended to exclude the personal car of R. H. Chiles, Sr., whatever its make and model. Appellant contends that this court is not bound in this case by the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., because the trial was had on stipulated facts and uncontroverted testimony of the witnesses. That rule provides:

"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *"

In support of this contention appellant has cited many cases from other circuits. However, this court has consistently held that Rule 52(a) is applicable in nonjury cases. The view of this court in this regard has been stated as follows:

"In a nonjury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law." Pendergrass v. New York Life Ins. Co., 8 Cir., 1950, 181 F.2d 136, 137; Cleo Syrup Corp. v. Coca Cola, 8 Cir., 1943, 139 F.2d 416, 417, 418, 150 A.L.R. 1056, certiorari denied, 1944, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074. See United States v. Springfield Fire & Marine Ins. Co., 8 Cir., 1953, 207 F.2d 935. See also Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn.L.Rev. 751, 771 (1957).

We now deal with the standard of proof that is required in Missouri to justify a trial court's granting the equitable relief of reformation. Appellant has relied upon a St. Louis (Mo.) Court of Appeals decision to establish the rule that in actions for reformation the evidence of mutual mistake must be so " 'clear, convincing and complete as to exclude all reasonable doubt in the chancellor's mind.' " Dutton v. Prudential Ins. Co., 1946, 238 Mo.App. 1058, 193 S.W.2d 938, 943. The St. Louis Court of Appeals is an intermediate appellate court. The highest court of that state is the Supreme Court of Missouri. Its statements as to Missouri law are, of course, controlling. In the recent case of Blevins v. Thompson, Mo., 1953, 255 S.W.2d 787, 790, supra, the Supreme Court of Missouri has pronounced the law of that state as follows:

"The reformation of an instrument may be had upon evidence that is clear and satisfactory, convincing the mind of the chancellor that the instrument does not express the contract the parties agreed upon, a mutual mistake. Employers' Indemnity Corp. v. Garrett, 327 Mo. 874, 38

S.W.2d 1049, 1054(10, 11); Van Eaton v. Dennis, Mo.Sup., 242 S.W. 2d 21, 25(3, 4); Dildine v. Rimpson, Mo.App., 240 S.W.2d 214, 220; Byers v. Buettner, 239 Mo.App. 510, 191 S.W.2d 339, 351. *The evidence need not be undisputed.* Net Realty & Inv. Co. v. Dubinsky, Mo.App., 94 S.W.2d 1108, 1117(8); Friday v. Scherer, Mo.App., 110 S.W. 819, 823 (2)." (Emphasis supplied.)

That there is substantial evidence to support the trial court's finding here is apparent from the record in this case, which shows a mutual intention of the Chiles Company and its insurance agent to obtain separate coverage at a lower cost on the company-owned vehicle used solely for pleasure by R. H. Chiles, Sr. That purpose was fulfilled on February 12, 1955, when appellant's policy was written to specifically cover the vehicle then used for that purpose, and Endorsement No. 4 was added to appellee's fleet policy to specifically exclude that vehicle from appellee's coverage. The trial court reasonably concluded that the parties' demonstrated intent to have low-cost liability coverage of the vehicle used by R. H. Chiles, Sr., was not altered by the purchase of the 1955 Chrysler, which in fact did replace the 1951 vehicle formerly used by him. There was also substantial evidence supporting the trial court's finding that the failure of the Quisenberry agency to change appellee's policy Endorsement No. 4 to specifically exclude the new vehicle was a mutual mistake of omission.

We hold that Rule 52(a) is applicable to this appeal and that appellant has not demonstrated that the trial court's findings are "clearly erroneous", as being without substantial evidence to sustain them or against the clear weight of the evidence or induced by an erroneous view of the law. We concur with the trial court that the evidence met the standard required by the law of Missouri that it was clear, satisfactory and convincing and justified the conclusion that there had been a mutual mistake.

Affirmed.